UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

LUCIANO PETROLITO                          :
          Plaintiff                        :          CIVIL ACTION NO.
v.                                         :          3:02-cv-484 (JCH)
                               :
ARROW FINANCIAL SERVICES, LLC     :
          Defendant.                       :          APRIL 7, 2004

## AMENDED[1] RULING ON PLAINTIFF'S RENEWED MOTION FOR CLASS CERTIFICATION [DKT. NO. 79]

Plaintiff, Luciano Petrolito ("Petrolito") brings this action against Arrow Financial Services, LLC ("Arrow") for violations of the federal Fair Debt Collection Practices Act, 15 U.S.C. §§ 1692d, 1692e, or 1692f ("FDCPA"), and the Connecticut Unfair Trade Practices Act ("CUTPA"), Conn. Gen. Stat. § 42-110a et seq. Petrolito has filed a renewed motion for class certification pursuant to Federal Rule of Civil Procedure 23, asking the court to certify a one-year FDCPA class and a three-year CUTPA class comprised of all Connecticut residents from whom the defendant sought to collect on a debt which it had purchased or received assignment of after the debt had been written off by the original holder. For the reasons that follow, the court grants the plaintiff's motion and certifies two classes, one FDCPA, one CUTPA, composed according to the criteria specified below.

---

[1]This Amended Ruling is issued to correct non-substantive typographical errors at pages 1, 3, 9, 12, and 18.

## I.      BACKGROUND

According to the complaint, Petrolito, a resident of Hartford, Connecticut, entered into a credit card agreement with First Premier Bank in or around 1997, for personal, family, and household use.  In or about 2001, when no payments had been made on Petrolito's account for at least two years, and after First Premier had "charged it off," Arrow purchased the account for "pennies on the dollar."  Compl. at ¶ 13-14.  Arrow had a state court complaint, seeking to collect a balance of the plaintiff's account, served on Petrolito.  The complaint falsely alleged that Arrow was in the business of issuing and maintaining credit card accounts.

Petrolito alleges that Arrow's practice and policy is to file lawsuits seeking a balance due on debts purchased by the defendant after the original creditor has charged off the debt; to forward the debt to Connecticut counsel for collection, including litigation; and to seek recovery based on a form complaint which misrepresents the character and legal status of the obligation. See Compl. at § 13, 17-19 [Dkt. No. 1].  According to plaintiff, these activities violate the Connecticut Consumer Collection Agency Act, § 36a-805, ("CCCAA"), and thus CUTPA and the FDCPA.

The FDCPA has a one-year statute of limitations, 15 U.S.C. § 1692k(d), while CUTPA has a three-year limitations period.  Conn. Gen. Stat. § 42–110g(f).  Petrolito thus moves for class certification for two separate classes:  a one-year FDCPA class, and a three year CUPTA class, consisting of "all consumers with a Connecticut address" from whom "defendant sought to collect on a debt which it purported to have purchased or received assignment after the debt became in default."  Pl.'s Mem. At 2 [Dkt. No. 80].

## II.      DISCUSSION

In order to certify a class, a litigant must satisfy the four requirements of Rule 23(a) of the Federal Rules of Civil Procedure and demonstrate that the proposed class action fits into one of the three categories under Rule 23(b).  Mailloux v. Arrow Fin. Servs., 204 F.R.D. 38, 40 (E.D.N.Y. 2001).  In analyzing a class certification motion, "a judge must look somewhere between the pleading and the fruits of discovery."  Sirota v. Solitronn Devices, Inc., 673 F.2d 566, 571-72 (2d Cir. 1982).  The court should accept the allegations in the complaint as true and should not conduct a preliminary inquiry into the merits of the case.  Caridad v. Metro North Commuter R.R., 191 F.3d 283, 291 (2d Cir. 1999).  Nonetheless, the plaintiff still bears the burden of establishing each requirement for class certification.  Id.  The plaintiff cannot rely solely on the allegations of the complaint, but must provide sufficient information on which the court can make a determination.  Pecere v. Empire Blue Cross and Blue Shield, 194 F.R.D. 66, 69 (E.D.N.Y. 2000) ("'[c]ertification . . . is dependant on [the plaintiff's] proof that each of the requirements of Rule 23(a) . . .  has been met.'")(quoting Lloyd v. Indus. Bia-Test Lab, Inc., 454 F. Supp. 807, 811-12 (S.D.N.Y. 1978)).  Before certifying a class, the district court must conduct a "rigorous analysis" and be "persuaded that the prerequisites of Rule 23(a) have been met."  Gen. Tel. Co. v. Falcon, 457 U.S. 147, 161 (1982).

A.    **Rule 23(a)**

Rule 23(a) sets forth the following prerequisites to class certification:

One or more members of a class may sue or be sued as a representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly an adequately protect the interests of the class.

Fed. R. Civ. P. 23(a). These requirements are commonly referred to as "numerosity," commonality," "typicality," and "adequacy."  See, e.g., Cruz v. Coach Stores, Inc., 202 F.3d 560 (2d. Cir. 2000).  A class "may only be certified if the trial court is satisfied, after a rigorous analysis, that the prerequisites of Rule 23(a) have been satisfied."  Gen. Tel. Co. of Southwest v. Falcon, 457 U.S. 147, 161 (1981).  See also Baffa v. Donaldson, Lufkin, & Jenrette Sec. Corp., 222 F.3d 52, 58 (2d Cir. 2000); Marisol A. v. Guiliani, 126 F.3d 372 (2d Cir. 1997).

The courts have created two additional requirements:  first, that an identifiable class exists from the outset of litigation, and second, that the representative plaintiff be a member of that class.  See Norman v. Conn. State Bd. of Parole, 458 F.2d 497 (2d Cir. 1972).  These requirements, combined with the Rule 23(a) requirements, are prerequisites for class certification.

Petrolito argues that the only question of law or fact in this case is "whether defendant committed unfair, deceptive or oppressive acts by seeking to collect on purchased debts contrary to the prohibition of the Connecticut Consumer Collection Agency Act, which expressly prohibits Arrow from attempting to collect or sue on the purchased or assigned accounts."  Pl.'s Mot. For Class Cert. at 2 [Dkt. No. 79].  The CCCAA provides, among other things, "(a) No consumer

4

collection agency shall: . . . (3) purchase or receive assignments of claims for the purpose of collection or institute suit thereon in any court." Conn. Gen. Stat. § 36a-805(a)(3). There is apparently no Connecticut case law interpreting this provision; Petrolito argues that this provision is violated by purchasing written-off debt for the purpose of collection or instituting suit.

This novel theory of the case differs from that of other actions in which courts have both granted and denied class certification. Most FDCPA classes involve some routine collection effort, like a form letter, the contents of which violate one of the specific provisions of the FDCPA. See, e.g., Mailloux v. Arrow Fin. Servs., 204 F.R.D. 38, 42 (E.D.N.Y. 2001) (discussing cases); McCabe v. Crawford & Co., 272 F. Supp. 2d 736, 743 (N.D.Ill. 2003).[2] However, Petrolito's claims rely on two cases, one from this district, asserting that violations of state law also violate the FDCPA's prohibition in 15 U.S.C. § 1692e(5) against using "false, deceptive, or misleading representation or means in connection with the collection of any debt," which specifically includes "[t]he threat to take any action that cannot legally be taken." See Picht v. Hawks, 236 F.3d 446, 448 (8th Cir. 2001); Gaetano v. Payco of Wisconsin, 774 F. Supp. 1404, 1414 (D. Conn. 1990).[3] Similarly, § 1692f(1) proscribes the collection of any amount "unless such amount is expressly authorized by the agreement creating the debt or permitted by law."

Petrolito also argues that the alleged CCCAA violation provides the basis for a CUTPA violation. A trade practice is "unfair" in the meaning of CUTPA if it offends public policy as it

---

[2]The FDCPA outlines as illegal a number of unfair collections actions. See, e.g.,15 U.S.C. 1692f(1)-(8).

[3]The Complaint also alleges, alternatively, violation of subsection (d), but the plaintiff's theory that the violation the CCCAA violates the FDCPA does not fit under that section, which section does not in any way incorporate a state law violation as basis for a FDCPA violation, and plaintiff's counsel specifically disclaimed all other theories at oral argument.

has been established by statutes, common law, or otherwise.  See Walsh v. Seaboard Sur. Co., 95 F. Supp. 2d 205 (D. Conn. 2000).  A CUTPA violation may be established by "showing a practice amounting to a breach of public policy." Tillquist v. Ford Motor Credit Co., 714 F. Supp. 607, 616 (D. Conn. 1989) (citing Web Press Services Corp. v. New London Motors, Inc., 203 Conn. 342, 355 (1987)).  "A breach of public policy, in turn, may result from a violation of another statute." Id. (citing Barco Auto Leasing Corp. v. House, 202 Conn. 106 (1987) (violation of RISFA also violated CUTPA)).  Thus, Petrolito argues that Arrow's alleged breach of the CCCAA is also a CUTPA violation.

The plaintiff's theory thus presents the same issue on both the CUTPA and FDCPA claims:  did Arrow purchase "written-off" debt for the purpose of collection or suit, and if so, did that purchase violate the CCCAA?  The court does not rule on the merits of a claim at the certification stage. Eisen v. Carlisle & Jacquelin, 417 U.S. 156, 177 (1974); Sirota v. Solitron Devices, Inc., 673 F.2d 566, 572 (2d Cir. 1982).

### 1.    Numerosity

The standard for numerosity under Rule 23(a) is not tied to a minimum number, but rather inquires whether the class is so numerous that joinder of all members is impracticable. Comer v. Cisneros, 37 F.3d 775, 796 (2d Cir. 1994); Jones v. CCH-LIS Legal Info. Servs., 11998 WL 671446, at * 1 (S.D.N.Y. Sept. 28, 1998) ("There is no magic minimum number that breathes life into a class.").  Generally, courts will find a class sufficiently numerous when it comprises 40 or more members. Robidoux v. Celani, 987 F.2d 931, 936 (2d Cir. 1993); Ansari v. New York Univ., 179 F.R.D. 112, 114 (S.D.N.Y. 1998) (citing Moore's Fed. Prac. § 23.22[2]). An estimate that is based on speculation is insufficient. Deflumer v. Overton, 176 F.R.D. 55, 58-59

(N.D.N.Y. 1997).      According to Petrolito's Memorandum in Support of Plaintiff's Renewed

Motion for Class Certification, made after class discovery, Arrow sent 675 initial letters between

March 28 and April 1, 2001 alone, and collections started after March 28 on 9759 accounts.

Though problems with the database format provided by Arrow made it difficult for the plaintiff to

provide a concrete number at this stage, these large numbers indicate that the numerosity

requirement is easily satisfied.

### 2.    Commonality

The commonality requirement is met if the plaintiff's grievances share a common question

of law or fact with potential class members.  Marisol A., 126 F.3d at 376.  As the Sixth Circuit

has explained, "[i]t is not every common question that will suffice, however; at a sufficiently

abstract level of generalization, almost any set of claims can be said to display commonality."

Sprague v. Gen. Motors Corp., 133 F.3d 388, 397 (6th Cir. 1998).  Instead, the court looks for "a

common issue the resolution of which will advance the litigation."  Id.  Class relief "is peculiarly

appropriate when the issues involved are common to the class as a whole and when they turn on

questions of law applicable in the same manner to each member of the class."  Califano v.

Yamasaki, 442 U.S. 682, 701 (1979) (internal quotations omitted).

As noted above, Petrolito contends that Arrow's mere purchase and collection of

defaulted, written-off debts is contrary to the provisions of the CCCAA, Conn. Gen. Stat. § 36a-

805.  The plaintiff asserts that the only question as to each class member is whether Arrow's

purchase and collection of these debts violated CCCAA, and as a consequence FDCPA and

CUTPA, both of which explicitly provide for class action enforcement.  See 15 U.S.C.A. §

1692k(a)(2)(B), (b)(2); Conn. Gen. Stat. 42-110g(b).[4]  The plaintiff asserts that the only question as to each class member is whether Arrow's purchase and collection of defaulted debts violated CCCAA, and as a consequence FDCPA and CUTPA.  The plaintiff argues that although there may be some individualized issues, that the defendant engaged in a single, unitary course of conduct as to each class member, and that the common nucleus of operative facts is sufficient to satisfy the commonality requirement of Rule 23. Mem. In Supp. of Renew Mot. for Class Cert. [Dkt. No. 80] at 9.

Although Arrow argues that the plaintiff has failed to show that the collection efforts of Arrow were uniform as to all of the potential class members, the court does not find that this requirement is necessary to a finding of commonality.  If, as the plaintiff asserts, the CCCAA is violated merely by seeking to collect on a purchased debt, then the manner in which Arrow sought to collect on the debts which it purchased is immaterial to a finding of liability.  The issue here disputed by the parties, whether Arrow's purchase of "written-off" debt violated the CCCAA, and thus the FDCPA and CUTPA, is a "common issue of law or fact" among the class members.  This is sufficient to satisfy Rule 23(a)(2)'s commonality requirement.  See Marisol A., 126 F.3d at 376.


### 3.    Typicality

The court also finds that Petrolito has demonstrated that his claims are typical of those of the class.  The crux of both the commonality and typicality requirements is "to ensure that 'maintenance of a class action is economical and [that] the named plaintiff's claim and the class

_____

[4] Examples of courts that have certified FDCPA class actions include Young v. Meyer & Njus, P.A.,183 F.R.D. 231, 235 (N.D. Ill. 1998); D'Alauro v. GC Services Ltd. Partnership, 168 F.R.D. 451, 36 Fed. R. Serv. 3d 885 (E.D.N.Y. 1996); Colbert v. Trans Union Corp., 1995 WL 20821 (E.D. Pa. 1995).

claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence.'" Marisol A., 126 F.3d at 376. Typicality "is satisfied when each class member's claim arises from the same course of events and each class member makes similar legal arguments to prove the defendant's liability." Id.

In this case, the plaintiff alleges a common pattern of wrongdoing: purchasing written-off debts for the purpose of collection or instituting suit. The plaintiff asserts that he will present the same evidence to support his individual claim as well as those of the class members. Given the legal theory on which the plaintiff alleges that Arrow violated CCCAA, the court finds that the claims of the plaintiff are typical of those of the class. See Caridad, 191 F.3d at 293 ("This criterion does not require the factual background of each named plaintiff's claim be identical to that of all class members; rather, it requires that the disputed issue of law or fact 'occupy essentially the same degree of centrality to the named plaintiff's claim as to that of other members of the proposed class.'") (citations omitted).

Both the FDCPA and CUTPA allow certification without regard to actual damages. Court have "routinely . . . conclud[ed] . . . that the need for individualized proof of damages alone will not defeat class certification." Gunnells v. Healthplan Servs. Inc., 348 F.3d 417, 429 (4th Cir. 2003) (finding that individual damages issues did not defeat certification even under the more stringent "predominance" inquiry of 23(b)(3)). The Second Circuit has recognized that there are a variety of ways for a district court to deal with individualized damages issues that may arise in the course of litigation. In re Visa Check/Mastermoney Antitrust Litig., 280 F.3d 124, 141 (2d Cir. 2001). Moreover, since the violation alleged here – the "core" of the damages suffered – is the illegal debt collection attempt, whether or not the plaintiff paid and suffered actual damages

does not affect his typicality as a class representative.  See Keele v. Wexler, 149 F.3d 589, 593-94

(7th Cir. 1998) (finding that the FDCPA "is blind when it comes to distinguishing between

plaintiffs who have suffered actual damages and those who have not," and that "[s]o long as [the

class representative] and the class members' injuries arose out of the same violative conduct," the

representative could properly represent the class).  The court does not find it relevant that the

plaintiff did not suffer actual damages as a result of Arrow's conduct, and finds that Petrolito's

claims are "typical" of those of the class.

### 4.    Adequate Representation

The defendant also argues that Petrolito is not an adequate class representative. "The

requirement that the named plaintiffs adequately represent the class is motivated by concerns

similar to those driving the commonality and typicality requirements, namely, the efficiency and

fairness of class certification." Marisol A., 126 F.3d at 378.

The defendant echoes its typicality objections in relation to the plaintiff's adequacy, but

the two requirements are distinct.  To demonstrate adequacy, "Rule 23(a)(4) requires that

plaintiffs demonstrate that class counsel is qualified, experienced, and generally able to conduct

the litigation." Id. (quoting In re Drexel Burnham Lambert, 960 F.2d 285, 291 (2d Cir. 1992)

(internal citations and quotations omitted)).  That issue has not been raised here.  The plaintiff

"must also demonstrate that there is no conflict of interest between the named plaintiffs and other

members of the plaintiff class." Id.  The plaintiff's lack of actual damages does not create a

conflict of interest here.  See Keele, 149 F.3d at 593-94, and discussion on typicality, supra.  The

plaintiff has also submitted an affidavit detailing his qualifications to serve as class representative,

and his counsel have done the same concerning their own adequacy.  See Affirmation of Luciano

10

Petrolito [Dkt. No. 90]; Certification of Plaintiff's Attorney David A. Searles [Dkt. No. 91];

Declaration of James A. Francis [Dkt. No. 91]; and Declaration of Joanne S. Faulkner [Dkt. No.

93]. Based on the record before the court and for all the reasons stated above, the court finds that

Rule 23(a)(4) adequacy requirement has been met.  Thus, Petrolito has satisfied all the Rule 23(a)

requirements.

### B.     Rule 23(b) Requirements

A class must meet not only meet all Rule 23(a) requirements, but further qualify under one

of the three part (b) subdivisions in order to be certified as a class action.  Rule 23(b) delineates

three types of class actions.  The first two subsections of the Rule outline two types of cases in

which class certification is especially appropriate:  first, in Rule 23(b)(1), where the rights of

either potential class members or the party opposing the class would be harmed by piecemeal

adjudication, and second, in (b)(2), where the class seeks injunctive or declaratory relief against a

party who has itself treated the class as a group in the context of its own acts or admissions.

Subsection (b)(3) addresses the residual situation where class adjudication would "achieve

economies of time, effort, and expense, and promote uniformity of decision as to persons similarly

situated, without sacrificing procedural fairness or bringing about other undesirable results," but

where the circumstances of (b)(1) or (b)(2) are not met.  Rules Advisory Comm. Notes, 39

F.R.D. 69, 102-03 (1966).

In this case, Petrolito has requested certification under all three sections.  However, the

differences between the first two subsections, (b)(1) and (b)(2), and subsection (b)(3), are

significant.  A Rule 23(b)(3) class is "[f]ramed for situations in which class action treatment is not

as clearly called for as it is in Rule 23(b)(1) and (b)(2) situations."  AmChem Prod. Inc. v.

Windsor, 521 U.S. 591, 615 (1997) (quoting Advisory Comm. Notes).  Rule 23(b)(3) contains

two prerequisites for certification not imposed on the other two types of classes: first, that

questions of law or fact common to the members of the class must "predominate" over any

questions affecting only individual members, and second, that a class action is "superior" to other

available methods for the fair and efficient adjudication of the controversy, to test whether the

proposed class is sufficiently cohesive to warrant adjudication by representation.  Id. at 623.

Because (b)(3) classes tend to be more heterogeneous than (b)(1) or (b)(2) classes,

subsection (b)(3) also provides additional notice and opt-out safeguards.  The Supreme Court

emphasized this in its recent decision in Ortiz v. Fibreboard Corp., 527 U.S. 815 (1999), where

the Court examined a decision to certify a mass tort case under a modified (b)(1) instead of (b)(3).

"In contrast to class actions brought under subdivision (b)(3), in cases brought under subdivision

(b)(1), Rule 23 does not provide for absent class members to receive notice and to exclude

themselves from class membership as a matter of right."  Id. at 834 n.13 ((b)(1) is a "mandatory"

class).[5]

Petrolito argues that the court may certify under all three sections if appropriate, but the

court reads the case law to suggest otherwise.  For instance, in Robertson v. Nat'l Basketball

Assoc., 556 F.2d 682 (2d. Cir. 1977), the Second Circuit cautioned that the court should certify a

proposed class under (b)(1) instead of (b)(3) if it fits the requirements of either of the first

subsection.  In Van Gemert v. Boeing Co., the Circuit similarly held that, where "all of the

elements of 23(b)(1) and 23(b)(2) are met," to apply 23(b)(3) "would run the risk of negating the

---

[5] The district court, however, retains discretion to allow opt-out or additional notice, even though it is not available as a matter of right.  See In the matter of Monumental Life Ins. Co., 343 F.3d 331, 340 (5th Cir. 2003); Kifer v. Ellsworth, 346 F.3d 1155, 1157 (7th Cir. 2003).

very purpose for which these rules were promulgated." <u>Van Germert v. Boeing Co.</u>, 573 F.2d

733, <u>reh'g granted</u>, 590 F.2d 433 (2d Cir. 1978), <u>aff'd</u>, 444 U.S. 472 (1980).  The <u>Van Gemert</u>

court thus held that the action could be maintained under Rule 23(b)(1) and (b)(2),[6] but not under

Rule 23(b)(3).  <u>Id.</u>  Similarly, in <u>Piazza v. EBSCO Indus.</u>, 273 F.3d 1341, 1352 (11th Cir. 2001),

the Eleventh Circuit found that the district judge abused his discretion in certifying a class

under(b)(3), when the class qualified under (b)(1) and where one difference between the two

subsections, the opt-out rights allowed by (b)(3), was prejudicial to the defendants.

### 1.    FDCPA Class

#### a.    Rule 23(b)(2)

The complaint prays for several remedies:  statutory damages pursuant to the FDCPA,

actual damages, attorney's fees, and injunctive or declaratory relief as the court may deem

appropriate.  Because "injunctive relief or corresponding declaratory relief," certification under

Rule 23(b)(2) is not available under the FDCPA, the court denies certification of the FDCPA class

under Rule 23(b)(2).

Rule 23(b)(2) provides for class litigation where "the party opposing the class has acted or

refused to act on grounds generally applicable to the class, thereby making appropriate final

injunctive relief or corresponding declaratory relief."  Fed. R. Civ. P. 23(b)(2).  The relief sought

need not be solely equitable in nature:  when both equitable and monetary relief are sought, the

district court may still certify the class under subsection (b)(2) if it determines that certification is

appropriate "in light of the relative importance of the remedies sought, given all of the facts and

---

[6] Because subsections (b)(1) and (b)(2) are similar in their lack of these additional prerequisites and safeguards, choosing between those two subsections is not as important.  <u>See</u> <u>Ingles v. City of New York</u>, 2003 WL 402565 at *7-8 (S.D.N.Y. Feb. 20, 2003) (certifying class under both (b)(1) and (b)(2)).

circumstances of the case." Parker v. Time Warner Cable, 331 F.3d 13, 20 (2d Cir. 2003) (internal quotations omitted). As the Second Circuit explained in Parker, when making a determination about subsection (b)(2) certification, the district court must first determine whether, "even in the absence of possible monetary recovery, reasonable plaintiffs would bring the suit to obtain the injunctive or declaratory relief sought." Id. (quoting Robinson v. Metro-North Commuter R.R., 267 F.3d 147 (2d Cir. 2001). Next, the court must also consider whether "the injunctive or declaratory relief sought would be both reasonably necessary and appropriate were the plaintiffs to succeed on the merits." Id.

The FDCPA claims do not qualify under this subsection. First, violations of the FDCPA cannot serve as the basis for injunctive relief. See Goldberg v. Winston & Morrone, P.C., 1997 WL 139526 at *4 (S.D.N.Y. March 26, 1997) (denying equitable relief under the FDCPA); see also Bolin v. Sears, Roebuck & Co., 231 F.3d 970, 977 n.39 (5th Cir. 2000) (courts "uniformly hold that the FDCPA does not authorize equitable relief").

Nor can the plaintiff obtain declaratory relief that "corresponds" to injunctive relief. As the court in Goldberg v. Winston & Morrone, P.C., concluded after thoughtful inquiry, a declaratory judgment in an FDCPA action would not "afford injunctive relief in a practical sense," since the defendant could still engage in similar practices and still only risk future suits for statutory damages. 1997 WL 139526 at *4 (S.D.N.Y. March 26, 1997) (Kaplan, J.) (citing cases). This does not, "as a practical matter . . . afford[] injunctive relief or serve[] as a basis for later injunctive relief." Id. (quoting 1966 Advisory Committee Note).[7]

---

[7] The court also noted that "[a]s the determination of plaintiff's claim for statutory damages definitively will establish the lawfulness of defendants' actions, it is doubtful whether a declaratory judgment would serve any useful purpose." Goldberg, 1997 WL 139526 at *4.

This case presents an identical situation.  Even if the court were to issue a declaratory ruling that Arrow violated the FDCPA by its debt collection practices, that declaration would not have the practical effect of an injunction, or correspond to injunctive relief.  The court thus declines to certify under Rule 23(b)(2).[8]

### b.    Rule 23(b)(1)

The certification of Petrolito's FDCPA class claims under Rule 23(b)(1) presents a closer call.  Rule 23(b)(1)(A) and (B) covers cases where multiple suits would create a risk of inconsistent adjudications or would possibly establish incompatible standards of conduct for the party opposing the class, and where individual actions would as a practical matter conclude the interests of other members of the class or preclude their ability to protect their own interests. Rule 23(b)(1)(B) is typically applied in limited fund cases; there is no such allegation of limited defendant resources here.  See Doe v. Karadzic, 192 F.R.D. 133, 137 (S.D.N.Y. 2000).

Rule 23(b)(1)(A)'s language, addressing "inconsistent adjudications," is broad.  It could arguably encompass all class actions, but it has not been applied in that manner.  See Newburg, Class Actions, at § 4.04.  "The fact that some plaintiffs may be successful in their suits against a defendant while others may not is clearly not a ground for invoking Rule 23(b)(1)(A)."  In Re Bendectin Prod. Liab. Litig., 749 F.2d 300, 305 (6th Cir. 1984).

Instead, courts generally apply Rule 23(b)(1)(A) restrictively, to classes where there is a statutory obligation to treat all class members alike, such as cases involving a statutory assessment, or the duties of a riparian landowner to downriver property owners; where both

_____

[8]The Complaint suggests, as discussed infra, that statutory damages and actual damages are the main relief sought by the plaintiff.

injunctive and monetary damages are sought.  Newburg at 4.08; <u>Ortiz</u>, 527 U.S. at 846-47.

"Many courts confronting the issue" of the meaning of "inconsistent adjudications" in (b)(1)(A)

"have held that Rule 23(b)(1)(A) does not apply to actions seeking compensatory damages." <u>In</u>

<u>Re Dennis Greenman Sec. Litig. v. Merrill Lynch, Pierce, Fenner, and Smith</u>, 829 F.2d 1539,

1545 (11th Cir. 1987) (citing cases).  "Implicit in these decisions is the view that only actions

seeking declaratory or injunctive relief can be certified under this section." <u>Id.</u> (citing <u>Abramovitz</u>

<u>v. Ahern</u>, 96 F.R.D. 208, 215 (D. Conn. 1982)).  "Underlying this is the concern that if

compensatory damage actions can be certified under Rule 23(b)(1)(A), then all actions could be

certified under the section, thereby making the other sub-sections of Rule 23 meaningless,

particularly Rule 23(b)(3)." <u>Id.</u>

      While recognizing that the plaintiff seeks a declaratory judgment, considering all of the

factors, this is not a class that fits the profile for certification under subsection (b)(1)(A).  Unlike,

for instance, a (b)(1)(A) ERISA suit involving the application of an ERISA-covered plan to a

number of employees, <u>see</u> <u>Piazza v. EBSCO Indus., Inc.</u>, 273 F.3d 1341 (11th Cir. 2001), the

only issue that could be inconsistently adjudicated here is whether Arrow's purchase of written off

debt violated the CCCAA, and if so, whether that violation in turn violated the FDCPA.  That

type of legal inconsistency is endemic to all suits involving the interpretation of a law, and while in

this instance meriting class treatment for the other reasons discussed in relation to Rule 23(a), is

not the type of "inconsistent adjudication" that subsection (b)(1)(A) was meant to encompass.

<u>See, e.g.</u>, <u>Vaughter v. Eastern Airlines, Inc.</u>, 817 F.2d 685, 690 (11th Cir. 1987) ("Normally, the

mere possibility that a defendant might be liable for payments to some potential class members but

not to others does not constitute the 'incompatible standards of conduct' of concern in Rule

16

23(b)(1)(A). . . . ").  Certification under Rule 23(b)(1)(A) is therefore denied.


c.      **Rule 23(b)(3)**

Petrolito also seeks certification under Rule 23(b)(3).  A (b)(3) class covers the residual

case of actions where the court "finds that questions of law or fact common to the members of the

class predominate over any questions affecting only individual members, and that a class action is

superior to other available methods for the fair and efficient adjudication of the controversy."

Fed. R. Civ. P. 23(b)(3).  Rule 23(b)(3) class actions "must meet predominance and superiority

requirements not imposed on other kinds of class actions."  Gunnells v. Healthplan Sevs., Inc.,

348 F.3d 417, 424 (4th Cir. 2003); see also In re Worldcom, Inc., Sec. Litig., 2003 WL

22420467 at *6 (S.D.N.Y. Oct. 24, 2003).

Here, Petrolito's theory of his case rests not on communications to the class members, see

Moore v. Painewebber, 306 F.3d 1247, 1253-55 (2d Cir. 2002) (holding that fraud claims based

on individual representations, particularly oral misrepresentations, or other such individualized

claims are generally deemed inappropriate for class adjudication), but on the very fact that the

"written-off" debt was purchased for the purpose of collection or suit.  As discussed above, there

are common issues of law and fact; moreover, those common questions clearly predominate.

Once the common legal issues are resolved, the only remaining question will be the determination

of damages suffered by each class member, and individual questions encountered there do not

prevent certification.  Gunnells, 348 F.3d at 429; Smilow v. Southwestern Bell Mobile Sys., 323

F.3d 32, 40 (1st Cir. 2003) ("individuation of damages in consumer class actions is rarely

determinative"); but see O'Sullivan v. Countrywide Home Loans, Inc., 319 F.3d 732, 744 (5th

Cir. 2003) (finding that damages were too individualized to allow certification).  The Second

Circuit has outlined a number of ways to handle individualized damages once a class has been

certified.  See In re Visa Check/Mastermoney Litig., 280 F.3d at 141.  Thus the court determines

that common issues predominate over individual ones.

     The class action is also the superior method of resolving this conflict.  Factors that are

relevant to an analysis of the superiority of the class action device include: "the interest of

members of the class in individually controlling the prosecution or defense of separate actions; the

extent and nature of any litigation concerning the controversy already commenced by or against

members of the class; the desirability or undesirability of concentrating the litigation of the claims

in the particular forum; the difficulties likely to be encountered in the management of a class

action."  In re WorldCom, Inc. Sec. Litig., 2003 WL 22420467 at *32 (S.D.N.Y. Oct. 24, 2003)

(citing AmChem Prod., Inc. v. Windsor, 521 U.S. 591, 625 (1997)).  "Suits brought under the

FDCPA such as this case regularly satisfy the superiority requirement of Rule 23."  In Re Risk

Mgmt Alternatives, 208 F.R.D. 493 (S.D.N.Y. 2002) (citing cases); see also Mailloux v. Arrow

Fin. Servs., LLC, 204 F.R.D. 38 (E.D.N.Y. 2001) (certifying Rule 23(b)(3) class).  As discussed

in relation to Rule 23(b)(1)(A), the prospect of relatively small recovery on individual

adjudications on identical issues with differing results makes class form superior to individual

litigation by class members, see Bonnett v. Educ. Debt Servs., 2003 WL 21658267 at *4 (E.D.

Pa. May 9, 2003), and the efficient way to adjudicate these claims.[9]

---

     [9] While the court notes that, because of the FDCPA's cap on class damages, class members may recover less in class form than they would have recovered in individual suits, the "possibility that putative class members would be entitled to greater recovery should they pursue claims on their own arises in every class action," and is "not grounds for denying class certification, if the other criteria are met."  Macarz v.

The parties have not advised the court of any other significant litigation concerning the controversy already commenced by or against members of the class.  Plaintiff's theory of the unitary issue governing the disposition of these claims makes it efficient and desirable to concentrate the litigation in one forum.  Finally, the difficulties likely to be encountered in the management of a class action are minimal, given the easy identification of class members from the records of the defendant.  This makes certification appropriate under Rule 23(b)(3).

### 2.    CUTPA Class

Petrolito also seeks relief under CUTPA.  CUTPA remedies include actual damages, Conn. Gen. Stat. § 42-110g(a), equitable relief, id., and attorney's fees, Conn. Gen. Stat. § 42-110g(b).

### a.    Rule 23(b)(2)

As discussed supra, when considering class certification under subsection (b)(2), the district court must first determine whether, "even in the absence of possible monetary recovery, reasonable plaintiffs would bring the suit to obtain the injunctive or declaratory relief sought." Parker, 331 F.3d at 20 (internal quotations omitted).  Because Petrolito's complaint seeks both injunctive and monetary relief under CUTPA, the court must look at the "relative importance of the remedies sought, given all of the facts and circumstances of the case."  Parker, 331 F.3d at 20.

---

Transworld Systems, Inc., 193 F.R.D. 46, 55-56 (D. Conn. 2000) (discussing FDCPA statutory cap on class damages).  Moreover, because the class is certified under subsection (b)(3), class members who desire to pursue individual actions may opt out of the class and do so.

Thought the complaint includes a prayer for injunctive relief, the court finds that equitable relief is of little importance relative to the monetary and statutory remedy sought by the plaintiff. Indeed, the complaint includes injunctive relief only as a discretionary afterthought.  He asks for: first, "the maximum amount of statutory damages provided under the FDCPA"; second, actual damages; third, attorney's fees, litigation expenses, and costs; and only lastly, "appropriate injunctive and declaratory relief, including disgorgement of all amounts received from class members and an order that the defendant take whatever steps are necessary to reverse the adverse effect caused by defendant's violation of Connecticut law."  This prayed-for remedy, while arguably equitable, is hardly injunctive or declaratory in the sense usually required to satisfy subsection (b)(2).  As a result, the court find that monetary remedy is clearly the overwhelming remedy sought, and that (b)(2) certification is not appropriate.

### b.      Rule 23(b)(1)

Where a plaintiff seeks mixed injunctive and monetary relief, opt out is not desirable and a Rule 23(b)(1) class is appropriate.  Newburg at § 4.08.  However, as discussed in relation to subsection (b)(2), the complaint does not invoke CUTPA injunctive relief in its traditional sense.[10] Moreover, as discussed in relation to Petrolito's request to certify an FDCPA class under subsection (b)(1), the proposed class does not satisfy the other requirements of that rule. Certification of the CUTPA class under subsection (b)(1)(A) is denied.

---

[10] Petrolito does not request a prospective injunction barring the practice as to future class members.  Instead, plaintiff's final grounds for relief requests, "[a]ppropriate injunctive and declaratory relief, including disgorgement of all amounts received from class members and an order the defendant take whatever steps are necessary to reverse the adverse effect caused by defendant's violation of Connecticut law."  Compl. at 5.

c.    **Rule 23(b)(3)**

Because certification is proper under neither Rule 23(b)(1) nor (b)(2), the court looks to (b)(3).  As discussed above, (b)(3) requires that common issues "predominate" and that the class action be the "superior" method for resolving the controversy.  The court looks to factors like the interest of members of the class in individually controlling the prosecution or defense of separate actions; the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; the desirability or undesirability of concentrating the litigation of the claims in the particular forum; the difficulties likely to be encountered in the management of a class action." In re WorldCom, Inc. Sec. Litig., 2003 WL 22420467 at *32.  For the same reasons discussed above, in reference to the FDCPA class, the court finds that certification under subsection (b)(3) is appropriate.

Finally, because the CUTPA statute of limitation is three years as opposed to the FDCPA's one-year limitation, Petrolito moves for a three year CUTPA class.  That class in its fullest, however, would encompass plaintiffs not within the one-year FDCPA class.  While such a class may not necessarily be outside this court's constitutional jurisdiction, see Almenares v. Wyman, 453 F.2d 1075, 1084-85 (2d Cir. 1972), the court declines to exercise its discretion to join these claims.  Potential plaintiffs in the first two years of the proposed CUTPA class are free to pursue those claim in state court, indeed, even in class form should they choose.  The court does not discern any prejudice they would suffer by doing so.

The one year CUTPA class is therefore certified under Rule 23(b)(3).  The court may further refine both the CUTPA and FDCPA classes as appropriate as discovery progresses.  See Marisol A., 126 F.3d at 378; see also Gen. Tel. Co. of the Southwest, 457 U.S. at 160.

21

**III.     CONCLUSION**

For the reasons discussed above, the court certifies the following classes: a one-year

FDCPA class, running from March 20, 2001 to the date of the filing of this action; and a one-year

CUTPA class, running from March 20, 2001 to the date of the filing of this action, consisting of

members of the FDCPA class who also have CUTPA claims within the three year statute of

limitations.

**SO ORDERED.**

Dated at Bridgeport, Connecticut this 8th day of April, 2004.


_____
Janet C. Hall
United States District Judge