## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

LUCIANO PETROLITO, on behalf of          :
himself and all others similarly situated  :
                                          :
                    Plaintiff,            :     CIVIL ACTION NO.
                                          :     3:02CV00484(JCH)(HBF)
vs.                                       :
                                          :
ARROW FINANCIAL SERVICES, LLC   :
                                          :     September 27, 2004
                    Defendant.            :

## DEFENDANT'S MEMORANDUM OF LAW
## IN SUPPORT OF ITS MOTION TO DISMISS FOR LACK OF SUBJECT
## MATTER JURISDICTION
## AND TO COMPEL ARBITRATION

Pursuant to Fed. R. Civ. P. 12(b)(1) and the Federal Arbitration Act, 9 U.S.C. §§

1-16 (the "FAA"), and for the reasons set forth herein, the defendant, Arrow Financial

Services, LLC ("Arrow"), submits this Memorandum of Law in Support of its Motion to

Dismiss for Lack of Subject Matter Jurisdiction and to Compel Arbitration. All of the

claims involved in this action are subject to mandatory arbitration under a written

arbitration agreement and, accordingly, this court lacks subject matter jurisdiction over

this case.

## I.    BACKGROUND

The plaintiff initiated this action by complaint filed with this Court on March 20,

2002 (the "Complaint). According to the allegations of the Complaint, plaintiff Luciano

Petrolito ("Petrolito") objects to measures taken by Arrow in Arrow's attempts to enforce

a credit card debt on which Petrolito had defaulted. This debt was "charged off" after

Petrolito had failed to pay any money on the debt for more than two years.  Complaint, Paragraph 14.  The Court (Hall, J.) certified this case as a class action on April 8, 2004.

Sometime in or about 1997, Petrolito entered into a credit card agreement with First Premier Bank (the "Contract").  Complaint, Paragraph 12.  The Contract is attached to the Affidavit of First Premier Bank, submitted herewith as Exhibit A.  The Contract contains a choice-of-law provision stating that South Dakota law applies.  It also contains an arbitration provision, wherein Petrolito agreed that the Contract involves "interstate commerce that is governed by the Federal Arbitration Act, 9 U.S.C. Sections 1-16, as it may be amended (the 'FAA'), and to the extent any provision of that Act is inapplicable, the laws of the State of South Dakota."

Under the terms of the Contract, the parties thereto waived their right to litigate any claim, as defined therein, or, in particular, to "PARTICIPATE AS A REPRESENTATIVE OR MEMBER OF ANY CLASS CLAIMANTS PERTAINING TO ANY CLAIM SUBJECT TO ARBITRATION UNDER THIS ARBITRATION PROVISION."  (Capital letters in original).  The Contract defines "claim" to mean:

> ... any claim, dispute or controversy between you and us arising from or relating to this Contract or your Credit Account relationship, any related or prior agreement (including applications for credit or refinancing) you may have had with us or the relationships resulting from this Contract or any prior agreement, *including* but not limited to the *validity, enforceability, or scope of this Arbitration Provision*, this Contract or any other prior contract. (Emphasis added).

> "Claim" includes claims of every kind and nature, including but not limited, (sic) to initial claims, counterclaims, cross claims and third party claims, and claims based upon contract, tort, fraud and other intentional tort, statutes (including Truth-In-Lending Act), regulations, common law and equity.

2

{W...} CARMODY & TORRANCE LLP    50 Leavenworth Street
Attorneys at Law    Post Office Box 1110
Waterbury, CT 06721-1110
Telephone: 203 573-1200

The Contract's very broad arbitration provision requires mandatory arbitration of "[a]ny claim between you (Petrolito) and the Bank arising out of or in any way relating to this Contract or your Credit Account." The Contract provides that "you or we may initiate Arbitration under the rules of the NAF."[1] As well,

> "**WE**", "**US**" and "**OUR**" Bank each refer to First PREMIER Bank (the "Bank") and all of its affiliates, licensees, predecessors, successors, assigns, and purchasers of[2] your Credit Account, and all the Bank's agents, employees, officers, directors, attorneys, and other representatives. In addition, "we", "us" and "our" mean any third party providing any product, service or benefit in connection with your Credit Account (including but not limited to credit insurance companies, debt collectors and all of their agents, employees, directors, and representatives) if, and only if, such third party is named a co-defendant with us in a Claim asserted by you.

"Credit Account" is a defined term which includes Petrolito's unpaid debt, which underlies the present action.

Petrolito does not allege in the Complaint that he did not fail to pay the debt owed on his credit card. He does allege that Arrow is a debt collector (Complaint, Paragraph 10), a purchaser (Complaint, Paragraph 11), and an assign of Petrolito's Credit Account. For purposes of this Motion to Dismiss, these "facts" will be "taken in the light most favorable to plaintiff as they must be." AVC Nederland B.V. v. Atrium Inv. Partnership, 740 F.2d 148, 149 (2d Cir. 1984).

---

[1] National Arbitration Forum.
[2] In the original, the word "of" is rendered as "or," apparently due to typographical error.

3

{W1315769} CARMODY & TORRANCE LLP    50 Leavenworth Street
Attorneys at Law    Post Office Box 1110
Waterbury, CT 06721-1110
Telephone: 203 573-1200

## II.    **LEGAL STANDARD**

A Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction contests the court's authority to hear and decide the case, so it is typically used when the claim does not involve a federal question and there is no diversity of citizenship between the parties or other basis for the federal court to exercise its limited jurisdiction. 5A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure Civil 2d § 1350 (2d ed. 1990). It is a flexible rule, though, that "often serv[es] as a vehicle for raising various residual defenses" such as failure to exhaust administrative remedies, lack of standing, or sovereign immunity. Id. (citing cases).

A plaintiff bears the burden of proving the existence of subject matter jurisdiction by a preponderance of the evidence. See Makarova v. United States, 201 F.3d 110, 113 (2d Cir. 2000). When considering a motion to dismiss for lack of subject matter jurisdiction under Fed.R.Civ.P. 12(b)(1), the court must accept as true all material allegations of the complaint and construe that complaint in favor of the non-moving party. Warth v. Seldin, 422 U.S. 490, 501 (1975). Where the existence of subject matter jurisdiction turns on a factual issue, the court is permitted to look beyond the complaint itself and may consider evidence outside the pleadings. See United States v. Vazquez, 145 F.3d 74, 80 (2d Cir. 1998); Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp., 109 F.3d 105, 108 (2d Cir. 1997). The burden of proving jurisdiction is on the party asserting it. See Malik v. Meissner, 82 F.3d 560, 562 (2d Cir. 1996).

Under the FAA, if a party brings a claim in federal court that is within the scope of a binding arbitration agreement, another party can move the court to compel arbitration

4

CARMODY & TORRANCE LLP
Attorneys at Law
50 Leavenworth Street
Post Office Box 1110
Waterbury, CT 06721-1110
Telephone: 203 573-1200

and to stay the proceeding until arbitration is completed. 9 U.S.C. §§ 3[3] & 4.[4]  If all of the

claims involved in the action are subject to arbitration, the court may dismiss the federal

action instead of staying it. See, e.g., Blair v. Scott Specialty Gases, 283 F.3d 595, 600-02

(3d Cir. 2002).  "[A]s long as ... [a] party ma[kes] clear that it [i]s seeking enforcement of

the arbitration clause in its motion to dismiss, it ha[s] sufficiently invoked the full

spectrum of remedies under the FAA."  Thompson v. Nienaber, 239 F. Supp.2d 478, 483

(D.N.J. 2002), citing Choice Hotels Int'l, Inc. v. BSR Tropicana Resort, Inc., 52 F.3d 707,

710 (4th Cir. 2001).  In making that determination, the court should apply ordinary state

common law governing the formation of contracts, with due regard for the federal policy

---

[3] **Stay of Proceedings Where Issue Therein Referable to Arbitration**:  If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration.

[4] **Failure to Arbitrate Under Agreement; Petition to United States Court Having Jurisdiction for Order to Compel Arbitration; Notice and Service Thereof; Hearing and Determination**:  A party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court which, save for such agreement, would have jurisdiction under title 28, in a civil action or in admiralty of the subject matter of a suit arising out of the controversy between the parties, for an order directing that such arbitration proceed in the manner provided for in such agreement. Five days' notice in writing of such application shall be served upon the party in default. Service thereof shall be made in the manner provided by the Federal Rules of Civil Procedure. The court shall hear the parties, and upon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue, the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement. The hearing and proceedings, under such agreement, shall be within the district in which the petition for an order directing such arbitration is filed. If the making of the arbitration agreement or the failure, neglect, or refusal to perform the same be in issue, the court shall proceed summarily to the trial thereof. If no jury trial be demanded by the party alleged to be in default, or if the matter in dispute is within admiralty jurisdiction, the court shall hear and determine such issue. Where such an issue is raised, the party alleged to be in default may, except in cases of admiralty, on or before the return day of the notice of application, demand a jury trial of such issue, and upon such demand the court shall make an order referring the issue or issues to a jury in the manner provided by the Federal Rules of Civil Procedure, or may specially call a jury for that purpose. If the jury find that no agreement in writing for arbitration was made or that there is no default in proceeding thereunder, the proceeding shall be dismissed. If the jury find that an agreement for arbitration was made in writing and that there is a default in proceeding thereunder, the court shall make an order summarily directing the parties to proceed with the arbitration in accordance with the terms thereof.

5

favoring arbitration.  <u>Volt Info. Sciences, Inc. v. Bd. of Trustees of Leland Stanford, Jr.</u>

<u>Univ.</u>, 489 U.S. 468, 475-76 (1989).

   In addition, the Supreme Court has instructed that federal statutory claims are

subject to arbitration unless Congress itself has expressed an intent to preclude arbitration.

<u>See</u> <u>Gilmer v. Interstate/Johnson Lane Corp.</u>, 500 U.S. 20, 26 (1991).  The burden of

establishing that Congress intended to preclude arbitration of a statutory claim rests with

the party seeking to avoid arbitration.  <u>Id.</u>  That intention can only be demonstrated

through the statutory text or legislative history or through an "inherent conflict" between

arbitration and the statute's underlying purposes, keeping in mind that questions of

arbitrability must be addressed with a healthy regard for the strong federal policy favoring

arbitration.  <u>Id.</u>

   Petrolito cannot meet this heavy burden.  Neither the text nor the legislative

history of the FDCPA suggests a Congressional intent to preclude arbitration.  <u>See</u>

<u>generally,</u> <u>Kimber v. Federal Financial Corp.</u>, 668 F. Supp. 1480 (M.D. Ala. 1987)

(exhaustively recounting the legislative history and underlying purpose of the FDCPA).

Nor would submitting FDCPA questions to arbitration pose an inherent conflict with the

statute's underlying purpose.  "By agreeing to arbitrate a statutory claim, a party does not

forgo the substantive rights afforded by the statute; it only submits to their resolution in an

arbitral, rather than a judicial, forum."  <u>Mitsubishi Motors Corp. v. Soler Chrysler-</u>

<u>Plymouth, Inc.</u>, 473 U.S. 614, 628 (1985).  Accordingly, lodging a dispute arising

pursuant to the FDCPA is in no way incompatible with submitting resolution of that

dispute to arbitration.  <u>See e.g.</u> <u>Stark v. Sandberg</u>, 2004 WL 1900319 (8th Cir.) (copy

attached); <u>see also</u> <u>Norton v. Wilshire Credit Corp.</u>, 36 F. Supp.2d 216 (D.N.J. 1999).  <u>See</u>

6

also <u>York v. Collect America</u>, Case No. 6:04-cv-538-Orl-28JGG (M.D. Fla. 2004)

(compelling arbitration of FDCPA claims pursuant to arbitration provision in credit card

agreement substantially similar to the one at issue in this case) (copy attached).

**III.    LEGAL ARGUMENT**

     **A.    <u>BOTH CONNECTICUT LAW AND SOUTH DAKOTA LAW<br>WOULD ACKNOWLEDGE THE VALIDITY OF THE<br>CONTRACT'S SOUTH DAKOTA CHOICE-OF-LAW PROVISION</u>.**

The Contract contains a choice-of-law, or "Controlling Law," provision favoring

South Dakota. "Therefore, the Contract will be interpreted by the laws of the State of

South Dakota applicable to contracts performed entirely within the State, or by applicable

Federal law as well as all rules, regulations, orders and interpretations promulgated under

such laws to the extent applicable to ... [Petrolito's] Credit Account." <u>See</u> Contract.

South Dakota law recognizes the validity of this choice-of-law provision. Furthermore,

even were the Court to decide to apply Connecticut law in interpreting substantive

provisions of the Contract, the Court would have to enforce the choice-of-law provision.

In other words, South Dakota law applies to interpretation of the Contract both under

South Dakota and Connecticut law.

Connecticut law "give[s] effect to an express choice of law by the parties to a

contract provided that it was made in good faith." <u>Elgar v. Elgar</u>, 238 Conn. 839, 848,

679 A.2d 937, 942 (1996). Significantly, it is not necessary that a contract be valid under

Connecticut law for a Connecticut court to analyze a choice-of-law provision. As the

Connecticut Supreme Court stated in <u>Elgar</u>, "If the agreement itself must be valid under

Connecticut law in order for the choice of New York law to be valid, any choice of law

provision specifying that the agreement must be interpreted according to the law of

7

another forum would be rendered meaningless." Id.  Accord Fieger v. Pitney Bowes Credit Corp., 251 F.3d 386, 393 (2d Cir. 2001).  Thus, a Connecticut court will not undertake an analysis such as the "most significant relationship test," but will instead apply the law chosen by the parties to a contract.  Reichold Chemicals, Inc. v. Hartford Accident and Indem. Co., 252 Conn. 774, 781, 750 A.2d 1051, 1055 (2000). Accordingly, a Connecticut court would respect the parties' intentions and apply South Dakota law to the Contract in this case.

　　　Similarly, the "Supreme Court of South Dakota generally honors contractual choice-of-law stipulations." Overholt Crop Ins. Svc. Co. v. Travis, 941 F.2d 1361, 1366 (8th Cir. 1991).  The Supreme Court of South Dakota has "held that when parties have agreed to be bound by the law of a specific place and the agreement is reasonable and fair, the law of that place may govern." Baldwin v. Heinold Commidities, Inc., 363 N.W.2d 191, 195 (S.D. 1985).  "[G]enerally, parties to a contract may effectively agree to be bound by the law of a particular state, but ... such agreements are subject to invalidation by overriding public policy considerations." Id.  Importantly, "[i]t is an overriding policy that arbitration will be favored, when provided for in a contract provision, as a means to the resolution of disputes." Thunderstik Lodge, Inc. v. Reuer, 1998 S.D. 110, 585 N.W.2d 819, 822 (S.D. 1998).  Thus, under South Dakota law, choice-of-law provisions are "honored," and where applying South Dakota law would serve to enforce an arbitration provision, the argument for respecting the parties' choice of South Dakota law is substantiated by the South Dakota public policy favoring arbitration.  Accordingly, South Dakota law governs the Contract.

8

**B.    BOTH CONNECTICUT LAW AND SOUTH DAKOTA LAW WOULD REQUIRE SUBMISSION OF PETROLITO'S CLAIMS TO ARBITRATION.**

**1.    CONNECTICUT LAW.**

The Connecticut Supreme Court "has for many years wholeheartedly endorsed arbitration as an effective alternative method of settling disputes 'intended to avoid the formalities, delay, expense and vexation of ordinary litigation.'" See O&G/O'Connell Joint Venture v. Chase Family Ltd. Partnership No. 3, 203 Conn. 133, 145 (1987), quoting Bridgeport v. Bridgeport Police Local 1159, 183 Conn. 102, 107 (1981).  The Connecticut Supreme Court has held that an order to arbitrate a particular dispute should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Fink v. Golenbock, 238 Conn. 183, 195 (1996).

The Connecticut Supreme Court has relied on the "positive assurance" test to determine whether a dispute is subject to an arbitration clause. Id.  The "positive assurance" test requires that a judicial inquiry "must be strictly confined to the question whether the reluctant party did agree to arbitrate the grievance." Id.  Furthermore, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration. Id.  There is also a strong federal policy favoring arbitration as an alternative dispute resolution process. See Threlkeld & Co., Inc. v. Metallgesellschaft Limited, 923 F.2d 245, 248 (2d Cir. 1991), citing Rodriguez de Quijas v. Shearson/American Express, Inc., 490 U.S. 477, 109 S.Ct. 1917, 1919-1920, 104 L.Ed.2d. 526 (1989).

Most significantly, Connecticut law recognizes the requirement to submit the very question of arbitrability to the arbitrators themselves.  As the Second Circuit has noted:

9

{W(318763)}
CARMODY & TORRANCE LLP
Attorneys at Law
50 Leavenworth Street
Post Office Box 1110
Waterbury, CT 06721-1110
Telephone: 203 573-1200

Parties to an arbitration agreement may provide that the arbitrator, not the court, shall determine whether an issue is arbitrable. But the issue of arbitrability may only be referred to the arbitrator if "there is `clear and unmistakable' evidence from the arbitration agreement, as construed by the relevant state law, that the parties intended that the question of arbitrability shall be decided by the arbitrator.... [A]rbitration is a creature of contract, and a person may only be compelled to arbitrate a dispute to the extent that he has agreed to do so. See AT&T Techs., Inc. v. Communications Workers of Am., 475 U.S. 643, 648 (1986); White v. Kampner, 641 A.2d 1381, 1384 (Conn. 1994). Thus, the intent of the parties, as evidenced by their contractual language, determines whether arbitrability is a determination for the court or for the arbitrator. Int'l Marine Holdings, Inc. v. Stauff, 691 A.2d 1117, 1120 (Conn. App.Ct. 1997) (citing Emcon Corp. v. Pegnataro, 562 A.2d 521, 523 (Conn. 1989)). The Connecticut Supreme Court's decision in City of Bridgeport v. Bridgeport Police Local 1159, 438 A.2d 1171 (Conn. 1981), ... exemplifies the inseparability of arbitration and contract law. There, the court's conclusion that the parties intended the question of arbitrability to be determined by the arbitrator was grounded in principles of contract formation. Id. at 1173 (stating that "whether the parties have agreed to submit to arbitration not only the merits of the dispute but the very question of arbitrability as well depends upon the intention manifested in the agreement they have made")....

First Options of Chicago, Inc. v. Kaplan, 514 U.S. 938 (1995)], reinforces ... the standard set forth in City of Bridgeport.

Under Connecticut law, an intent to refer the matter to the arbitrator may be indicated "by an express provision or through the use of broad terms to describe the scope of arbitration, such as `all questions in dispute and all claims arising out of the contract or `any dispute that cannot be adjudicated.'" City of Bridgeport, 438 A.2d at 1173. When determining the intent of the parties, courts must look to the plain language of the contract and construe the contract as a whole. In City of Bridgeport, the court considered a provision in an agreement providing for arbitration of any grievance of "any employee or group of employees . . . concerning any matter or condition arising out of the employee-employer relationship." 438 A.2d at 1173 (internal quotation marks omitted). The court concluded that this "all inclusive" language clearly demonstrated the parties' intention to submit the question of arbitrability to the arbitrator. Id.; see also White, 641 A.2d at 1384 (stating that broad

10

language in an arbitration clause "generally grants jurisdiction to the arbitrator to determine the issue of arbitrability").

Bell v. Cendant Corp., 293 F.3d 563, 566-568 (2d Cir. 2002).

The Arbitration Provision in the Contract applies to "any claim, dispute or controversy between you and us arising from or relating to this Contract or your Credit Account relationship, any related or prior agreement (including applications for credit or refinancing) you may have had with us or the relationships resulting from this Contract or any prior agreement, *including* but not limited to the *validity, enforceability, or scope of this Arbitration Provision*, this Contract or any other prior contract." (Emphasis added). The parties' grant of power to the arbitrators is "inclusive, categorical, unconditional and unlimited." PaineWebber Inc. v. Bybyk, 81 F.3d 1193, 1199 (2d Cir. 1996). The "clause is as broad an arbitration provision as one can imagine." Bell, at 568. The Contract's Arbitration Provision "expressly provide[s] for arbitration of arbitrability." Id. at 569. Cf. Scinto v. Sosin, 51 Conn. App. 222, 721 A.2d 552 (1998).

All of Petrolito's claims are subject to arbitration under Connecticut law, and the very question of arbitrability, pursuant to the Contract, is a matter for the arbitrators to decide; accordingly, the Court should dismiss this action and compel arbitration.

## 2.     SOUTH DAKOTA LAW.

The South Dakota Supreme Court has stated:

> We have consistently favored the resolution of disputes by arbitration. Thunderstik Lodge, Inc. v. Reuer, 1998 SD 110, ¶ 14, 585 N.W.2d 819, 822. The purpose for arbitrating disputes is to provide a relatively quick and inexpensive resolution without the cost and delay that may come with legal proceedings. Id. There is an overriding policy favoring arbitration when a contract provides for it. Id.

11

Moreover, South Dakota has adopted the Uniform
Arbitration Act. <u>See</u> 21-25A-1, which provides:

> A written agreement to submit any existing
> controversy to arbitration or a provision in a
> written contract to submit to arbitration any
> controversy thereafter arising between the
> parties is valid, enforceable, and irrevocable,
> save upon such grounds as exist at law or in
> equity for the revocation of any contract.

If there is doubt whether a case should be resolved by
traditional judicial means or by arbitration, arbitration will prevail.
<u>Thunderstik Lodge, Inc.</u>, 1998 SD 110 at ¶ 15, 585 N.W.2d at 822
(citing <u>City of Hot Springs v. Gunderson's, Inc.</u>, 322 N.W.2d 8, 10
(S.D. 1982)).

<u>Rossi Fine Jewelers, Inc. v. Gunderson</u>, 2002 S.D. 82, 648 N.W.2d 812, 814 (S.D. 2002).

Thus, a South Dakota court will enforce an arbitration provision where the "clause is a

clear and unambiguous part of the contract...." <u>Baldwin v. Castro County Feeders I, Ltd.</u>,

2004 S.D. 43, 678 N.W.2d 796, 802 (S.D. 2004).

The Eighth Circuit is no less emphatic:

> The FAA reflects Congress's "declaration of a liberal federal
> policy favoring arbitration agreements," <u>Moses H. Cone Mem'l
> Hosp. v. Mercury Constr. Corp.</u>, 460 U.S. 1, 24 (1983), and its
> intent "to move the parties to an arbitrable dispute out of court and
> into arbitration as quickly and easily as possible," <u>id.</u> at 22.  It
> provides that "[a] written provision in . . . a contract evidencing a
> transaction involving commerce to settle by arbitration a
> controversy thereafter arising out of such contract . . . shall be valid,
> irrevocable, and enforceable, save upon such grounds as exist at
> law or in equity for the revocation of any contract." 9 U.S.C. § 2. A
> "party resisting arbitration bears the burden of proving that the
> claims at issue are unsuitable for arbitration." <u>Green Tree Fin.
> Corp.-Ala. v. Randolph</u>, 531 U.S. 79, 91 (2000).

<u>Madol v. Dan Nelson Automotive Grp.</u>, 372 F.3d 997, 1000 (8th Cir. 2004).

12

CARMODY & TORRANCE LLP
Attorneys at Law

50 Leavenworth Street
Post Office Box 1110
Waterbury, CT 06721-1110
Telephone: 203 573-1200

As to the arbitrability of arbitrability, South Dakota law is barely less unequivocal

than Connecticut law. In South Dakota, a court will first determine whether a valid

agreement to arbitrate in fact exists. The court will then look to the arbitration provision

for a "clear demonstration" of purpose to submit questions of arbitrability to arbitration:

> Arbitrators derive their authority from, and must comply
> with, the arbitration agreement. Aamot v. Eneboe, 352 N.W.2d 647,
> 649 (S.D. 1984). The question of whether a contract to arbitrate
> exists is a question for the court. City of Hot Springs v. Gunderson's
> Inc., 322 N.W.2d 8, 11 (S.D. 1982). Further, this court has stated:
>
> > The power to construe and define the intent
> > and meaning of plans and specifications
> > made a part of a contract is one thing, and
> > may properly be, as it was in this instance,
> > left to arbiters selected by the parties; the
> > power to construe the contract itself and to
> > determine what is within and what without
> > such contract is a different and independent
> > question, and belongs primarily to the
> > courts....
>
> [A]ny claim that the parties intended to exclude the courts
> from consideration of arbitrability must be borne by a clear
> demonstration of that purpose.

Azcon Const. Co. v. Golden Hills Resort, 498 N.W.2d 630, 633-34 (S.D. 1993).

Whether a specific dispute falls within the scope of an arbitration agreement is a

matter for a court to decide. Madol v. Dan Nelson Automotive Grp., 372 F.3d 997, 1000

(8th Cir. 2004). However, where the arbitration agreement clearly demonstrates that it

applies to the very question of arbitrability, the court must submit that question to the

arbitrators. Azcon, id. Even where the question goes to the validity of the contract "as a

whole, and not just the arbitration agreement[]," precedent from the Eighth Circuit and the

Supreme Court "requires that such arguments be submitted to arbitration." Madol, id.,

13

CARMODY & TORRANCE LLP
Attorneys at Law
50 Leavenworth Street
Post Office Box 1110
Waterbury, CT 06721-1110
Telephone: 203 573-1200

citing Prima Paint Corp. v. Flood & Conklin Mfg. Co., 388 U.S. 395, 403-04 (1967);

Houlihan v. Offerman & Co., 31 F.3d 692, 695 (8th Cir. 1994).

As discussed above, the Contract's Arbitration Provision permits no doubt about its applicability to questions of arbitrability. It "clearly demonstrates" the parties' intention to submit all Claims, as very broadly defined by the Contract, to arbitration. All of Petrolito's claims in the Complaint are Claims under the Contract. Petrolito agreed to submit these claims to arbitration, and South Dakota law requires Petrolito to honor that agreement. Accordingly, the Court should dismiss this case and compel arbitration.

### C.    ARROW HAS STANDING TO INVOKE THE CONTRACT'S ARBITRATION PROVISION PURSUANT TO THE CONTRACT AND TO THE FACTS ALLEGED IN THE COMPLAINT.

As set forth in the "Background" section above, and as alleged at Paragraph 12 of the Complaint, Petrolito acknowledges his contractual relationship with First Premier Bank (the "Bank"). He avers that his claims in the Complaint stem from attempts to collect a debt that Petrolito incurred pursuant to the Contract. Any objection by Petrolito to the means taken in collection of his debt necessarily amount to a dispute or controversy arising from Petrolito's Credit Account relationship. Thus, by the Contract's definition of a Claim, Petrolito's averments in this case are Claims.

For purposes of a Motion to Dismiss, Petrolito's averments are true "facts." Warth v. Seldin, 422 U.S. 490, 501 (1975). Pursuant to these "facts," Arrow is alleged to be a purchaser and an assign of Petrolito's Credit Account. Arrow is also alleged to be a Consumer Collection Agency under Connecticut law. Complaint, Paragraph 10. Arrow does not deny that it is a Consumer Collection Agency. The Contract defines "Claim" to

14

mean any claim, dispute or controversy "between you and us." "You" is defined to mean Petrolito, and "us" is defined to encompass any assign of Petrolito's Credit Account, purchaser of Petrolito's Credit Account, or debt collector providing any product, service, or benefit in connection with Petrolito's Credit Account.

Under any definitional rubric, the Complaint is a Claim. It is a claim, dispute or controversy between "you" (Petrolito) and "us" (Arrow). At the very least, any objectionable conduct by Arrow in the collection of the debt owed by Petrolito would give rise to a claim, dispute, or controversy "arising from or relating to ... the relationships resulting from this Contract." Contract, Arbitration Provision. Consequently, like all Claims under the Contract, it must be submitted to arbitration, both for a determination of arbitrability and for the merits.

Even were the plain language of the Contract found to be less than absolutely clear that it extends to Arrow and requires submission of Petrolito's claims to arbitration, Arrow would yet have standing to invoke the Contract's Arbitration Provision. Many federal courts have found instances in which non-signatories to an arbitration clause may enforce that clause nonetheless:

> "[A]s a general matter, one 'who is not a party to a contract has no standing to compel arbitration.' Britton, [infra], 4 F.3d 742 at 744; Ex parte Stallings & Sons, Inc., 670 So.2d 861, 862 (Ala. 1995).

> Certain exceptions may apply where nonsignatories, that is, persons or entities with whom no party to an arbitration agreement has manifestly agreed to arbitrate disputes, can obtain standing to compel signatories to arbitrate claims with them. See, e.g., McBro Planning & Dev. Co. v. Triangle Elec. Constr. Co., 741 F.2d 342 (11th Cir. 1984) (equitable estoppel allows nonsignatory defendant to compel arbitration); Sam Reisfeld & Son Import Company v. S.A. Eteco, 530 F.2d 679, 681 (5th Cir. 1976) (nonsignatory

15

defendants could stay judicial proceedings where charges against [signatory and nonsignatory] defendants were based on the same operative facts and were inherently inseparable); See also J.J. Ryan & Sons v. Rhone Poulenc Textile, S.A., 863 F.2d 315, 320-21 (4th Cir. 1988) (charges against parent company based on same facts as claim against subsidiary, with whom arbitration agreement is in effect, may be referred to arbitration also); Arnold v. Arnold Corp., 920 F.2d 1269, 1281 (6th Cir. 1990) (nonsignatory defendant, as agent of signatory defendant, may compel arbitration); Britton v. Co-op Banking Group, 4 F.3d 742, 744 (9th Cir. 1993); Staples v. The Money Tree, Inc., 936 F. Supp. 856 (M.D.Ala. 1996) (nonsignatory defendants could compel arbitration because signatory plaintiff's claims were founded on and intertwined with underlying contract obligations).

Goodwin v. Ford Motor Credit Co., 970 F. Supp. 1007, 1016 (M.D. Ala. 1997).  The

Goodwin court very emphatically implied that were the entity asserting the arbitration

provision an assignee of the contracts in question, it would "be considered a party to the

arbitration agreement, stepping directly into the shoes of" the original creditors.

Goodwin, 970 F. Supp. at 1017; see also id. at n. 6.

The South Dakota Supreme Court has found precedent, including from this Court,

for allowing non-signatories to invoke an arbitration clause:

> Rossi argues that some defendants are not covered under the arbitration clause. Those defendants are Mylan, the purchaser of Nature's 10, and various officers of the two companies. As the successor to Nature's 10, Mylan is bound by the obligations incurred by that company; the individual defendants are properly included only in their capacities as officers or directors. In accordance with the Federal Arbitration Act,
>
> > [t]he Federal courts have consistently afforded agents the benefit of arbitration agreements entered into by their principals to the extent that the alleged misconduct relates to their behavior as officers or directors or in their capacities as agents of the corporation. The rule is necessary not only to prevent circumvention of arbitration agreements, but also to effectuate the intent of the signatory parties to protect

16

{W1198269}  CARMODY & TORRANCE LLP
Attorneys at Law

50 Leavenworth Street
Post Office Box 1110
Waterbury, CT 06721-1110
Telephone: 203 573-1200

individuals acting on behalf of the principal in furtherance of the agreement.

> Hirschfeld Productions v. Mirvish, 88 N.Y.2d 1054, 1056, 673 N.E.2d 1232, 1233, 651 N.Y.S.2d 5, 6 (N.Y. 1996). Furthermore, "[i]t would be manifestly unfair to allow [plaintiffs] to assert claims arising out of agreements against nonsignatories to those agreements without allowing those [defendants] [also to] invoke the arbitration clause contained in the agreements." A.L. Williams & Assoc., Inc. v. McMahon, 697 F. Supp. 488, 494 (N.D. Ga. 1988). Nor should plaintiffs be able to "avoid the arbitration for which [they] had contracted simply by adding a nonsignatory defendant, lest the efficacy of contracts and the federal policy favoring arbitration be defeated." Cosmotek Mumessillik Ve Ticaret Ltd. Sirkketi v. Cosmotek USA, Inc., 942 F. Supp. 757, 759 (D. Conn. 1996). This rule applies especially when all the claims against the nonsignatory defendants are based on alleged substantially interdependent and concerted misconduct by both the nonsignatories and one or more of the signatories to the contract. MS Dealer Service v. Franklin, 177 F.3d 942, 947 (11th Cir. 1999).

Rossi Fine Jewelers, Inc. v. Gunderson, 2002 S.D. 82, 648 N.W.2d 812, 815-16 (S.D. 2002).

Above all, this court has held that any potential limitation on the applicability of an arbitration clause to a non-signatory would affect only a non-signatory **plaintiff** seeking to **avoid** arbitration. The issue "is not whether non-signatories to the agreement can be compelled to arbitrate; rather, it is whether … [a] non-signator[y] may compel plaintiff, admittedly a party to the contract, to arbitrate." Gambardella v. Pentec, Inc., 218 F. Supp. 2d 237, 243 (D. Conn. 1997). Any such limitation is "*inapplicable* where, as here, it is the non-signatory that *seeks to invoke* the arbitration clause." Zaks v. Tes Franchising, 2004 WL 1553611, * 7 (D. Conn.) (internal citations and quotation marks omitted; emphasis added) (copy attached).

17

Whether Arrow is, in fact, an assign or purchaser of Petrolito's Credit Account is not relevant to this analysis. It matters only that Petrolito has alleged that Arrow is an assign or purchaser for purposes of a Motion to Dismiss. By Petrolito's own allegations, this claim is subject to arbitration. As in A.L. Williams & Assoc., Inc. v. McMahon, 697 F. Supp. 488, 494 (N.D. Ga. 1988), "[i]t would be manifestly unfair to allow [Petrolito] to assert claims arising out of [the Contract] against [a nonsignatory] to those agreements without allowing ... [Arrow] [also to] invoke the arbitration clause contained in the agreements."

Petrolito bargained for arbitration of his claims when he agreed to the terms governing the use of his credit card. He brought this claim about by failing to pay back money that he had borrowed. He assented to arbitrating this claim, foregoing the right to litigate, refraining from participating in a class action, and abstaining from representing the plaintiff class. In consideration for these promises, Petrolito had the privilege to use a credit card. He abused that privilege, scoffed at his promises, and defiantly initiated the present action. For all of the reasons set forth above, the Court should dismiss this case and compel arbitration.

## IV.  CONCLUSION

For all of the foregoing reasons, the defendant, Arrow Financial Services, LLC, respectfully requests that the Court grant its Motion to Dismiss For Lack of Subject Matter Jurisdiction and to Compel Arbitration.

18

THE DEFENDANT,
ARROW FINANCIAL SERVICES LLC


BY:  _Ann H. Rubin_ (signature)
     Ann H. Rubin
     Federal Bar No. ct 04486
     Carmody & Torrance LLP
     50 Leavenworth Street
     P.O. Box 1110
     Waterbury, CT 06721-1110
     (203) 573-1200
     Its Attorneys

19

## CERTIFICATION

This is to certify that a copy of the foregoing was mailed, postage prepaid, on the above-written date, to:

Joanne S. Faulkner, Esq.
123 Avon Street
New Haven, CT  06511

David A. Searles
Donovan Searles, LLC
1845 Walnut St., Suite 1100
Philadelphia, PA  19103

James A. Francis
Francis & Mailman, P.C.
Land Title Building, 19th Floor
100 South Broad Street
Philadelphia, PA  19110

*Courtesy Copy:*

Magistrate Judge Holly B. Fitzsimmons
United States District Court
District of Connecticut
915 Lafayette Boulevard
Bridgeport, CT 06604

_____
Ann H. Rubin

{W0315803} CARMODY & TORRANCE LLP    50 Leavenworth Street
Attorneys at Law              Post Office Box 1110
                              Waterbury, CT 06721-1110
                              Telephone: 203 573-1200