UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

LUCIANO PETROLITO, on behalf of
himself and all others similarly situated,
 Plaintiff,                                                           CASE NO. 3:02CV 484 JCH ("HBF")

v.

ARROW FINANCIAL SERVICES, LLC                    October 15 2004
Defendant.


PLAINTIFF'S  MEMORANDUM OF LAW IN
OPPOSITION TO MOTION TO COMPEL ARBITRATION

Plaintiff opposes defendant's belated Motion to Compel Arbitration (Doc. No. 116) for several reasons. First, there is no admissible evidence of any arbitration agreement. Plaintiff denies that any arbitration agreement exists and files his Affidavit herewith. Second, if any arbitration agreement exists, Arrow has waived it. Third, if any arbitration agreement exists, the terms are so one-sided, particularly its attempted preclusion of any class claims, that it is unenforceable under the Federal Arbitration Act (FAA).

Fourth, the belated motion is a dilatory attempt to hold class certification hostage. If the Court finds that there is an issue of fact about whether there is an arbitration agreement, plaintiff is entitled to a jury trial on that issue. FAA, 9  U.S.C. § 4. Moreover, in order to determine additional bases for unconscionability plaintiff needs discovery as to (a) whether the consumer's costs of arbitration preclude enforcement; (b) the arbitration forum's "repeat-player" or other bias; and (c) the additional unconscionability of any terms of the purported arbitration agreement. Further, if the Court finds that no arbitration agreement exists or declines to compel arbitration, Arrow has the option of an immediate appeal, causing further

delay. 9 U.S.C. §§ 4, 16. The dilatory purpose and effect of the motion is patent.

     A. <u>The motion is meritless in claiming that arbitration invokes subject matter jurisdiction.</u> Subject matter jurisdiction attains pursuant to the Fair Debt Collection Practices Act, 15 U.S.C. §1692k.The Court necessarily has subject matter jurisdiction in order compel arbitration. On the face of the FAA, 9 U.S.C. § 3, the court, "upon being satisfied that the issue involved in such suit is referable to arbitration," can <u>stay</u> the trial, "providing the applicant for the stay is not in default in proceeding with such arbitration." Section 4 of the FAA also recognizes that a court having jurisdiction may order arbitration on the application of any party who has not failed to comply with the arbitration agreement – as defendant has done here.

     B. <u>No arbitration agreement exists.</u> Plaintiff's affidavit shows he has not entered into any arbitration agreement. Had one been proposed to him, he would not have assented, based on his opposition to arbitration agreements. Arrow has provided no admissible evidence that an arbitration agreement exists. Arrow has submitted a Declaration of Barbara Fairchild that is not notarized nor does it contain the federally mandated language that the Declaration is made "under penalty of perjury under the laws of the United States of America." 28 U.S.C. § 1746. As such, the Declaration is ineffective to support any statements contained therein, and cannot be relied upon by this Court. See <u>Pollock v. Pollock,</u> 154 F. 3d 601, 612, n.20 (6th Cir. 1998); <u>In re Adams,</u> 229 B.R. 312, 319 (Bankr. S.D.N.Y. 1999) (statute provides that declarations come in two varieties, sworn and unsworn . . . . in order for an unsworn declaration … to be effective it must be made under penalty of perjury," citing cases).

     Further, the Declarant's conclusory assertion that plaintiff entered into an arbitration agreement is entirely unsupported. The fine print document attached to the Declaration is

dated 2003, well after the date of the 1996 Contract to which it refers. The Declarant does not say when or how this was presented to plaintiff, or when or how it became effective. Since plaintiff never used the card, the Contract could not have become effective. See generally "accepted credit card," 15 U.S.C. § §1602(*l)* and Reg. Z, 12 C.F.R. §226.12(b)(2) n.21. Most frequently, arbitration clauses have been inserted in the periodic account disclosures or "change of terms" stuffers mandated by Reg. Z §226.9. If the consumer does not agree and ceases to use the card, he is not bound by the change. *See Perry v. FleetBoston Financial Corp.*, 2004 WL 1508518 (E.D. Pa. July 6, 2004) (arbitration clause did not bind consumers who did not use credit cards prior to addition of clause).

    C. <u>Arrow has not shown that it is an assignee of any contract.</u> Arrow told plaintiff, the members of the class, and the Connecticut Judicial Department that it had purchased and owned their debts. If its representations were true, Arrow could readily show that it became an assignee of the purported Contract. Conspicuous by its absence is any admissible evidence that Arrow owns the Contract. If it does not own the Contract, Arrow's attempt to invoke an arbitration clause is baseless and disingenuous, as well as dilatory. Arbitration cannot be invoked by a stranger to the Contract. By its terms, the Contract applies only to First Premier Bank affiliates, licensees, predecessors, successors, assigns and purchasers. Absent evidence that Arrow has any such status, arbitration with Arrow is specifically excluded by the Contract terms. Def. Mem. at 3. More importantly, on its face the arbitration clause does not apply because this FDCPA suit does not arise from or relate to the Contract, but concerns only the separate and distinct illegality of the collection attempt itself, years later, by a wholly different business entity, and having nothing to do with the Contract.

    D. <u>Arrow's motion should be denied.</u> Based on plaintiff's Affidavit, and the unsworn,

3

conclusory, and nonfactual nature of Arrow's nonprobative Declaration, Arrow's motion should be denied. Under section three of the FAA, arbitration can be ordered only if "the court in which such suit or proceeding is pending [is] satisfied that the issue involved in such suit or proceeding is referable to arbitration under such agreement." It is well established that the Court must first determine whether there is a contract to arbitrate.

> Thus, a gateway dispute about whether the parties are bound by a given arbitration clause raises a "question of arbitrability" for a court to decide. See id., at 943-946 (holding that a court should decide whether the arbitration contract bound parties who did not sign the agreement); *John Wiley & Sons, Inc. v. Livingston,* 376 U. S. 543, 546-547 (1964) (holding that a court should decide whether an arbitration agreement survived a corporate merger and bound the resulting corporation). Similarly, a disagreement about whether an arbitration clause in a concededly binding contract applies to a particular type of controversy is for the court. See, e.g., *AT&T Technologies, supra*, at 651-652 (holding that a court should decide whether a labor-management layoff controversy falls within the arbitration clause of a collective-bargaining agreement); *Atkinson v. Sinclair Refining Co.*, 370 U. S. 238, 241-243 (1962) (holding that a court should decide whether a clause providing for arbitration of various "grievances" covers claims for damages for breach of a no-strike agreement).

Howsam v. Dean Witter Reynolds, Inc., 537 U.S. 79,   (2002).

E. Arrow has waived arbitration. The FAA also recognizes that a court having jurisdiction may order arbitration on the application of any party who has not failed to comply with the arbitration agreement – as defendant has done here. 9 U.S.C. § 4. Arrow sued plaintiff in state court, a factor which supports the waiving of arbitration. This federal matter was filed in March, 2002. Defendant's answer, filed in June, 2002, did not even mention arbitration, let alone assert it as an affirmative defense. The Motion for Class Certification was filed in April, 2002. Substantive discovery is yet to be undertaken as to the merits of the claim, with defendant now hinting that the facts contradict defendant's explicit and repeated

representation to the class members and the courts that defendant purchased the accounts it was attempting to collect. There are now in excess of 114 numbered docket entries. The matter has been characterized by defendant's dilatory tactics, objections to discovery, multiple efforts to derail class certification, multiple requests for extensions of time. Defendant belatedly deposed plaintiff and then unsuccessfully sought even more belated discovery as to his ability to be a class representative. Even defendant's apparent willingness to engage in settlement discussions now appears to have been a dilatory tactic, with its eve-of-conference draft motion to dismiss, finally filed a week later. At this late date, after so much protracted and expensive litigation, Arrow has waived arbitration. *E.g.*, PPG Indus., Inc. v. Webster Auto Parts, Inc., 128 F.3d 103, 107 (2d Cir. 1997); Kramer v. Hammond, 943 F.2d 176, 179 (2d Cir. 1991). In Cotton v. Slone, 4 F.3d 176 (2d Cir. 1993), the court stated.

> Slone actively litigated this dispute in federal court. Discovery was conducted by both parties, with Slone initiating at least two depositions, including those of Cotton and her expert witness. Slone made several substantive motions, including one for summary judgment. In resisting discovery, Slone repeatedly invoked and submitted himself to the powers and procedures of the district court: he sought extensions of time and revisions of the discovery schedule, and at least twice sought protective orders which were denied. Slone's conduct has imposed unnecessary expense and delay on Cotton, which would be compounded if she were now required to arbitrate her claim. Meanwhile, Slone has secured for himself the benefits of pretrial discovery that is often unavailable in an arbitral forum. See *Zwitserse Maatschappij van Levensverszekering en Lijfrente v. ABN Int'l Capital Markets Corp*., 996 F.2d 1478, 1480 (2d Cir. 1993) (per curiam) (waiver found where party litigated for over a year in non-U.S. judicial forum and engaged in discovery not available in arbitration). The resulting prejudice to Cotton compels a finding of waiver.

Id. at 179-80. *See* Jones Motor Co. v. Chauffeurs, Teamsters and Helpers Local Union No. 633, 671 F.2d 38, 43 (1st Cir. 1982) (Breyer, J.) (noting the unfairness of allowing a party a second chance in an arbitral forum after obtaining an adverse result in court). As one court has observed:

5

> [i]f [a party's] demand for arbitration were to be upheld, there would be nothing to keep any litigant with an arbitration clause from testing the judicial waters, . . . and then nullifying all that has gone before by demanding arbitration. If that is what a deliberately delayed demand for arbitration can do, then all that is bad about litigation – including most particularly unnecessary delay, wasteful expense, and the manipulative impulse to forum-shop – would be fostered, rather than deterred.

Uwaydah v. Van Wert County Hosp., 246 F. Supp. 2d 808, 814 (N.D. Ohio 2002). Connecticut law is to the same effect. The Batter Building Materials Co. v. Kirschner, 142 Conn. 1, 11-13, 110 A.2d 464 (1954) (arbitration not waived by two month delay, but can be waived by "the failure of the defendants to demand arbitration within a reasonable time"); Naftzger v. Naftzger and Kuhe, Inc., 26 Conn. App. 521, 526, 602 A.2d 606 (1992) (arbitration waived; "We also note that the defendant gladly consumed the time of the attorney trial referee and the judicial system until he sought enforcement of the arbitration provision. Such a tactic is not in accord with the policy of efficient use of judicial resources").

Plaintiff submits that Arrow has waived arbitration by not raising the claim early in the state court litigation, but instead waiting until well after the time for motions to dismiss in this case had expired. Indeed, Arrow's motion is aimed at evading compliance with the Court's Order to turn over the class list so plaintiff can send the agreed-upon class notice. By engaging in such extensive litigation, and by conducting and obtaining discovery therein which it *could* not have obtained in arbitration, Arrow has prejudiced plaintiff and the class.

F. A clause that purports to prevent class actions is substantively unconscionable and unenforceable.   Many cases have held that arbitration clauses cannot limit a consumer's right to participate in a class action. *Ting v. AT&T,* 319 F.3d 1126, 1150 (9th Cir. 2003); *Szetela v. Discover Bank,* 97 Cal. App. 4th 1094, 1101, 118 Cal Rptr. 2d 862 (2002) (limit on class action would provide a disincentive "to avoid the type of conduct that might lead to class

6

litigation in the first place" and compromis[es] important consumer rights"). The Alabama Supreme Court found a contract term banning class actions built into an arbitration clause to be unconscionable. *See Leonard v. Terminix Int'l Co.* 2002 WL 31341084 (Ala. Oct. 18, 2002) (petition for rehearing denied). By "foreclosing the Leonards from an attempt to seek practical redress through a class action and restricting them to a disproportionately expensive individual arbitration," the Court found that the defendants had essentially closed the door of justice to these consumers. *Id.* at *8. Thus, the arbitration clause was unconscionable.

Similarly, in *State ex rel Dunlap v. Berger*, 567 S.E.2d 265 (W. Va. 2002), the West Virginia Supreme Court of Appeal held that an arbitration clause which effectively barred class actions under state law was unconscionable. The court's reasoning was rooted in that state's longstanding law prohibiting exculpatory clauses in contracts of adhesion:

> Based on all of the foregoing and in fidelity to the approach that we have taken in this area, we recognize and hold that exculpatory provisions in a contract of adhesion that if applied would prohibit or substantially limit a person from seeking and obtaining and vindicating rights and protections or from seeking and obtaining statutory or common law relief and remedies that are afforded by or arise under state law that exists for the benefit of the public are unconscionable; unless the court determines that exceptional circumstances exist that make the provisions conscionable.

567 S.E.2d at 275. In *Dunlap*, the Court explained that in light of the modest claims at issue, the defendant's contractual ban on class actions was effectively an unconscionable exculpatory clause. "In Mr. Dunlap's case, the total of $8.46 in insurance charges that Friedman's added to his purchase price by Friedman's [sic] is precisely the sort of small-dollar/high volume (alleged) illegality that class action claims and remedies are effective at addressing." The court went on to find that "[i]n many cases, the availability of class action relief is a *sine qua non* to permit the adequate vindication of consumer rights." The court warned that "[t]hus, in the contracts

7

of adhesion that are so commonly involved in consumer and employment transactions, permitting the proponent of such a contract to include a provision that prevents an aggrieved party from pursuing class action relief would go a long way toward allowing those who commit illegal activity to go unpunished, undeterred, and unaccountable." Id. at 278-79.

A number of other courts have reached the same conclusion. *See Luna v. Household Finance Corp. III* , 236 F. Supp. 2d 1166, 1179 (W.D. Wash. 2002) ("Here, the prohibition on class actions allows the Arbitration Rider to be 'used as a sword to strike down access to justice instead of a shield against prohibitive costs.' This finding weighs heavily in favor of a finding of substantive unconscionability.") (citations omitted); *Comb v. Paypal*, 218 F. Supp. 2d 1165, 1176-77 (N.D. Cal. 2002) (following *Szetela* and finding arbitration clause unconscionable, in part because it prohibited collective actions); *ACORN v. Household Internat'l, Inc.*, 211 F. Supp. 2d at 1170-71 (N.D. Cal. 2002) (following *Szetela* and the district court opinion in *Ting*, holding that an arbitration clause that prohibited class actions was unconscionable); *Powertel v. Bexley* 743 So. 2d 570, 576 (Fla. App. 1 Dist. 1999) ("By requiring arbitration of all claims, Powertel has precluded the possibility that a group of its customers might join together to seek relief that would be impractical for any of them to obtain alone."); *Bailey v. Ameriquest Mortgage Co.* 2002 WL 100391, *7 (D. Minn. Jan. 23, 2002) ([T]he inability to proceed collectively . . . has the effect of rendering plaintiff's individual claims impractical to pursue. The right to proceed collectively is particularly critical to these plaintiffs, who, as previously mentioned, have relatively small individual claims."); and *In re Knepp* 229 B.R. 821, 827 (N.D. Ala. 1999) ("The pervasive use of arbitration agreements in consumer contracts could have the effect of eliminating class actions. If class actions are no

longer an option, the vast majority of consumer claims involving relatively small sums of money on an individual basis will be left without a remedy.").

Other issues essential to determining the enforceability of any arbitration agreement remain. There are several reasons why an arbitration clause is substantively unconscionable in a consumer case and cannot be enforced. It may be too costly –substantially more costly than the judicial forum. Discovery of facts as to costs is essential to that issue. Green Tree Financial Corp. v. Randolph, 531 U.S. 79, 90-92 (2000). Here, the consumer must pay a filing fee, and half of the arbitrator's hearing fees (sometimes several thousand dollars per day). Arbitration clauses have been stricken on the basis of the comparison between costs in the judicial forum (the parties do not pay the judge by the hour) and the arbitral forum (arbitrators expect hourly substantial fees, sometimes in advance). Shankle v. B-G Maint. Mgmt of Col., Inc., 163 F.3d 1230, 1235 (10th Cir. 1999) (agreement requiring litigant to pay ½ of arbitration costs did not provide an accessible forum); Paladino v. Avnet Computer Techs., Inc., 134 F.3d 1054, 1062 (11th Cir. 1998) (costs constitute a basis for concluding that the arbitration clause does not promote statutory policy); Cole v. Burns Int'l Sec. Servs., 105 F.3d 1465, 1484 (D.C. 1997) (unacceptable to require individual to pay arbitrator's fees "because such fees are unlike anything that he would have to pay to pursue his statutory claims in court"; "Indeed, we are unaware of any situation in American jurisprudence in which a beneficiary of a federal statute has been required to pay for the services of the judge assigned to her or his case").

There is no provision for reimbursement of the arbitral hearing fees or costs, even if the consumer prevails (although the consumer can recover attorney's fees). Sometimes there is a "loser pays" rule in the arbitral forum, whereby the entire cost for both parties is imposed on the loser. Such a rule is contrary to public policy in a consumer situation.

9

Or the forum may be demonstrably biased. Defendant's arbitration clause provides for arbitration before the National Arbitration Forum (NAF). Courts have refused to enforce arbitration clauses involving NAF. <u>Mercuro v. Superior Court</u>, 116 Cal. Rptr. 2d 671. 675-85 (Cal. App. 2 Dist. 2002). In <u>Toppings v. Meritech Mortgage Services, Inc. & Chase Manhattan Bank,</u> 569 S.E.2d 149 (W. Va. 2002), the court refused to enforce the arbitration agreement because the "lender's compulsory arbitration clause or rider, which mandates that all disputes arising out of a consumer transaction be submitted to a lender-designated decision maker [NAF] compensated through a case-volume fee system whereby the decision maker's income as an arbitrator is dependent on continued referrals from the credit, so impinges on neutrality and fundamental fairness that it is unconscionable and unenforceable."  See also <u>Dunlap v. Berger</u>, 567 S.E.2d 265 (W. Va. 2002) (extensive discussion of enforceability of consumer arbitration provisions).

Plaintiff is entitled to discovery as to the costs, bias, and unconscionability of the purported arbitration agreement. Until plaintiff receives discovery responses, he cannot make additional well-recognized arguments as to the invalidity of any arbitration agreement. (He intends to raise unlawful discrimination issues, based on anticipated responses, as well as coverage issues,[1] unless they are mooted by denial of Arrow's motion at this time.)

---

[1]  Specht v. Netscape Communications Corp., 306 F.3d 17, 30 (2d Cir. 2002).

An arbitration clause may be found substantively unconscionable in a consumer case for several reasons. Arbitration may be costly. Discovery of facts as to costs is essential to that issue. Green Tree Financial Corp. v. Randolph, 531 U.S. 79, 90-92 (2000). The clause may be one-sided. Or the forum – particularly NAF – may be demonstrably biased.  The motion to dismiss or stay cannot be ruled upon until plaintiff conducts discovery as to the validity and enforceability of the arbitration clause, including particularly whether it is procedurally or substantively unconscionable. UCC §42a-2-302(2); Blair v. Scott Specialty Gases, 283 F.3d 595 (3d Cir. 2002); Berger v. Cantor Fitzgerald Securities, 942 F. Supp. 963, 966 (S.D.N.Y. 1996); Hayes v. County Bank, 713 N.Y.S.2d 267, 270 (Sup. Ct. 2000) (regarding bias challenges to the NAF – defendant's oft-criticized chosen forum). See Mercuro v. Superior Court, 116 Cal. Rptr. 2d 671, 675-85 (Cal. App. 2 Dist. 2002)).

Meanwhile, this action should not be stayed or delayed at this late date.

## CONCLUSION

Arrow's motion should be denied since there is no evidence of any valid or applicable arbitration agreement. Alternatively, Arrow's motion should be denied due to waiver, or denied pending discovery as to the enforceability of any arbitration clause.

THE PLAINTIFF

BY____/s/ Joanne S. Faulkner___
JOANNE S. FAULKNER ct04137
123 Avon Street
New Haven, CT 06511-2422
(203) 772-0395
j.faulkner@snet.net

                    DAVID A. SEARLES  
                    Donovan Searles, LLC  
                    1845 Walnut St., Suite 1100  
                    Philadelphia, PA 19103  
                     (215) 732-6067  
                     (215) 732-8060 (fax)  
                    dsearles@donovansearles.com

                    JAMES A. FRANCIS  
                    Francis & Mailman, P.C.  
                    19th Floor  
                    100 South Broad Street  
                    Philadelphia, PA 19110  
                     (215) 735-8600  
                     (215) 940-8000  (fax)  
                     jfrancis@consumerlawfirm.com

      This is to certify that the foregoing was mailed on October 14, 2004, postage prepaid, to:

Ann H. Rubin  
P.O. Box 1110  
Waterbury CT 06721-1110

                                        __/s/ Joanne S. Faulkner__  
                                        Joanne S. Faulkner