UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

_____
LUCIANO PETROLITO and                  )
JOSEPH J. CRISCO,                      )
on behalf of themselves and all        )
others similarly situated,             )
                                       )
                    Plaintiffs,        )      C. A. No. 3:02 CV 484 JCH (HBF)
                                       )
              v.                       )
                                       )
ARROW FINANCIAL SERVICES,              )
 L.L.C.                                )
                    Defendant.         )
_____    )

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR
PRELIMINARY APPROVAL OF SETTLEMENT AND NOTICE TO CLASS**

Plaintiffs Luciano Petrolito and Joseph Crisco, by counsel, hereby move the Court to

preliminarily approve a settlement of this class action pursuant to Rule 23 of the Federal Rules of

Civil Procedure, and to approve the proposed Notice to the Class.

The proposed Order of Preliminary Approval submitted herewith is in the form that

accompanies the parties' Settlement Agreement.  A copy of the Settlement Agreement with

exhibits is being filed simultaneously herewith.  The proposed Order establishes certain dates

and method for the mailing of notice to the Class, the procedure and timing for administration

and filing of objections, if any, to the settlement or requests for exclusion by members of the

Class.

**I.      NATURE OF THE LITIGATION**

On March 20, 2002, Mr. Petrolito filed a complaint initiating class action litigation

against Defendant Arrow Financial Services, LLC ("Arrow") in *Petrolito v. Arrow Financial*

*Service LLC*, No. 3:02 CV 484 (District of Connecticut) brought pursuant to the federal Fair

Debt Collection Practices Act ("FDCPA") and the Connecticut Unfair Trade Practices Act ("CUTPA"). On September 26, 2002, Mr. Crisco commenced class action litigation pursuant to CUTPA against Arrow in *Crisco v. Arrow Financial Services LLC* in the State of Connecticut Superior Court for the Judicial District of New Haven, which action was transferred on November 22, 2002 to the Complex Litigation Docket, Judicial District of Waterbury at Waterbury, Docket No. X02-CV-02-0175840S. The *Petrolito* case and the *Crisco* case are collectively referred to herein as the "Actions."

Plaintiffs asserted in the Actions that Arrow violated the FDCPA and CUTPA by purchasing and seeking to collect on numerous charged-off debts, telling Connecticut consumers and Connecticut courts that Arrow had purchased their debts. The Connecticut Consumer Collection Agency Act ("CCCAA") expressly prohibits debt collectors from attempting to collect or sue on the purchased or assigned accounts.[1] Plaintiffs asserted the same claim under both CUTPA and the FDCPA: that Arrow's collection efforts were illegal by reason of the prohibition of the CCCAA (CCCAA regulations include identical prohibitions as the applicable FDCPA prohibitions found in sections 1692e(2)(A), (5), (8), (9), (10) and 1692f(1)).

On April 26, 2002, Mr. Petrolito filed a Motion for Class Certification in the *Petrolito* case, seeking certification of a class of similarly situated Connecticut consumers with claims going back one year under the FDCPA and claims going back three years under CUTPA. Arrow opposed class certification and, on December 4, 2002, Arrow filed a Motion to Dismiss in the *Petrolito* case, which Petrolito opposed. On March 17, 2003, the Court denied without prejudice both the Motion for Class Certification and the Motion to Dismiss. On May 12, 2003, Petrolito renewed his Motion for Class Certification, which Defendant again opposed. On April 8, 2004,

---

[1]    CCCAA § 36a-805 provides, "No consumer collection agency shall: . . . (3) purchase or receive assignments of claims for the purpose of collection or institute suit thereon in any court."

the Court entered an Order in the *Petrolito* case in which it granted plaintiff's Motion for Class Certification and certified Mr. Petrolito as class representative and his counsel as class counsel. *Petrolito v. Arrow Financial Service, LLC*, 221 F.R.D. 303 (D. Conn. 2004).  The Court certified a class defined as a one year FDCPA and one year CUTPA class comprised of all Connecticut residents from who Arrow sought to collect on a debt which it had purchased or received assignment of after the debt had been written off by the original holder.  *Petrolito*, 221 F.R.D. at 306.

In September 2004, the parties met with U.S. Magistrate Judge Fitzsimmons in an attempt to address a possible settlement of the Actions.  The parties left that conference at an impasse, but counsel thereafter resumed discussions and negotiations continued from late 2004 through March 2005, when an Agreement of Settlement was finally documented and signed.  As part of the overall settlement, Plaintiffs have filed a Second Amended Complaint in the *Petrolito* action, adding the claims presently asserted in the *Crisco* case to the claims already pending in the *Petrolito* case, adding Joseph Crisco as an additional named plaintiff and class representative and amending the definition of the class to comport with the definition of the settlement class. Defendant has stipulated to the amendment.  If and when the Agreement of Settlement receives final approval from the Court, the parties will dismiss the *Crisco* case with prejudice.

As discussed below, the parties wish to present to the Court a proposed settlement which they believe is fair, reasonable and adequate – and which avoids the ongoing expense and uncertainties of further litigation, trial and possible appeal.

## II.    ELEMENTS FOR CERTIFICATION OF A SETTLEMENT CLASS

Pursuant to Fed. R. Civ. P. 23(e), a class action cannot be settled without certification of a class and court approval.  In deciding whether to approve a proposed class action settlement,

the court must determine whether the terms are fair, reasonable and adequate, *Weinberger v. Kendrick*, 698 F.2d 61, 73 (2d Cir. 1982), and that it was not a "product of collusion," *D'Amato v. Deutsche Bank*, 236 F.3d 78, 85 (2d Cir. 2001), *citing Joel A. v. Guiliani*, 218 F.3d 132, 138 (2d Cir. 2000).

Here, the parties seek preliminary approval of a settlement on behalf of the following: all residents of the State of Connecticut from whom, during the period from March 20, 1999 through March 31, 2005, Arrow sought to collect a non-business debt which it purported to have purchased or received assignment of after the debt had been written off by the original holder, but not including such residents who have obtained a bankruptcy discharge of such debt or who are deceased (the "Class").

### A.    Propriety of Class Certification

The Court has already found, at least as to the *Petrolito* case, that class certification is appropriate. *Petrolito v. Arrow Financial Services, LLC*, 221 F.R.D. 303 (D. Conn. 2004). However, because the proposed settlement now encompasses the *Crisco* matter as well, the Court should examine anew whether the Actions qualify for class treatment.

A court determining whether to approve a class action settlement must first determine that a class is certifiable under Fed. R. Civ. P. 23 ("Rule 23"). See *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 619-20 (1997); *In re Toys "R" Us Antitrust Litigation*, 191 F.R.D. 347, *350* (E.D.N.Y. 2000). In determining the appropriateness of class certification, "the court may consider the special circumstance of a request for settlement-only class certification and need not inquire into certain problems that would arise only if the case were to proceed to trial, such as the difficulty of trial management." *Toys "R" Us*, 191 F.R.D. at 350 (citing *Amchem*, 521 U.S. at 619-20).

"Although a trial court must conduct a 'rigorous analysis' to ensure that the prerequisites of Rule 23 have been satisfied before certifying a class, 'a motion for class certification is not an occasion for examination of the merits of the case." *In re Visa ChecklMastermoney Antitrust Litigation*, 280 F.3d 124, 134-35 (2d Cir. 2001) (quoting *Caridad v. Metro-North Commuter R.R.*, 191 F.3d 283, 291 (2d. Cir. 1999)). Thus, when determining whether a class action should be certified, the Court should base its determination "solely on the allegations set forth in the complaint, which are accepted as true." *Civic Ass'n of the Deaf of New York City, Inc. v. Giuliani*, 915 F. Supp. 622, 632 (S.D.N.Y. 1996).

To qualify for certification, a putative class action must meet the four requirements set forth in Rule 23(a): (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class. Fed. R. Civ. P. 23(a); *In re Visa Check Mastermoney*, 280 F.3d at 132. Moreover, a class action may be maintained only if it qualifies under at least one of the categories provided in Rule 23(b), which permits class certification if:

> the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

Fed. R. Civ. P. 23(b)(3). The party seeking to certify a class bears the burden of demonstrating that the requirements of Rule 23 are satisfied. See *Amchem*, 521 U.S. at 614.

### 1.    Numerosity

Rule 23(a)(1) requires that the class be so numerous that joinder of all members is impracticable. Satisfaction of the numerosity requirement does not necessarily require that

joinder is impossible, but only that plaintiff will suffer a litigation hardship or inconvenience if joinder is required. *See Familienstiftung v. Askin*, 178 F.R.D. 405, 409 (S.D.N.Y. 1998) (observing that "[i]mpracticability does not mean impossibility, but rather difficulty or inconvenience."); *Consolidated Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir. 1995); *see also Ansari v. New York Univ.,* 179 F.R.D. 112, 114 (S.D.N.Y. 1998) ("[g]enerally speaking, courts will find that the 'numerosity' requirement has been satisfied when the class comprises 40 or more members and will find that it has not been satisfied when the class comprises 21 or fewer.").

Here, Arrow has represented that approximately 42,800 persons fall within the definition of the Class. Accordingly, the Court should find that the numerosity requirement is satisfied.

## 2.     Commonality

Rule 23(a)(2) requires plaintiffs to show that their claims raise issues of law and fact that are common to the proposed class, *see Robinson v. Metro-North Commuter R.R.*, 267 F.3d 147, 155 (2d Cir. 2001), that is, whether the common questions are at the "core' of the cause of action alleged." *Harrison v. Great Springwaters of America, Inc.*, No. 96 Civ. 5110, 1997 WL 469996, at *3 (E.D.N.Y. June 18, 1997), citing *Halford v. Goodyear Tire & Rubber* Co., 161 F.R.D. 13, 18 (W.D.N.Y. 1995). Here, the core issues raised in the Actions relate to the illegality of the purchase of consumer debt and the efforts to collect that debt from Connecticut. This Court has already found that the issue whether Arrow's purchase of written-off debt violated the CCCAA, and thus the FDCPA and CUTPA, is a common issue of law or fact among the Class members. *Petrolito*, 221 F.R.D. at 309. Accordingly, the Court should find that plaintiffs' claims meet the commonality requirement of Rule 23(a)(2).

3.    **Typicality**

Rule 23(a)(3) requires that "the claims of the class representatives be typical of those of the class." Fed. R. Civ. P. 23(a)(3). Typicality concerns whether "each class member's claim arises from the same course of events, and [whether] each class member makes similar legal arguments to prove defendant's liability." *Marisol A. V. Guiliani*, 126 F.3d 372, 376 (2d Cir. 1997) *(per curiam)* (internal citations omitted). Here, plaintiffs contend that both the representative plaintiffs and each Class member was subjected to the same debt collection practice. Plaintiffs will rely on the same legal theories to support their individual claims as well as those of the Class. *Petrolito*, 221 F.R.D. at 310. Because "the typicality requirement is usually met irrespective of minor variations in the fact patterns underlying individual claims, *Robidoux v. Celani*, 987 F.2d 931, 936-37 (2d Cir. 1993), the Court should find that the typicality requirement is satisfied.

4.    **Adequacy of Representation**

To satisfy Rule 23(a)(4), the class representative must "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). That is, a class representative must "possess the same interest and suffer the same injury as the class members." *Amchem*, 521 U.S. at 625-26. The adequacy requirement is determined on two grounds: (1) whether class counsel is "qualified, experienced and generally able to conduct the litigation" and (2) whether the class members have interests that are "antagonistic to one another." *In re Drexel Burnham Lambert Group, Inc.,* 960 F.2d 285, 290, 291 (2d Cir. 1992) (internal citations and quotation marks omitted).

With respect to the first ground, plaintiffs' counsel has already been certified by this Court as adequate. *Petrolito*, 221 F.R.D. at 310. Plaintiffs respectfully request that the Court renew its finding that counsel are experienced in litigating consumer protection actions, and

specifically, class action litigation related to the FDCPA, and thus, are qualified, experienced and generally able to conduct the present litigation.

With respect to the second ground, the Court should also find that the Class representatives' interests are not antagonistic to the interests of the other Class members. As the Court found in its earlier decision, Mr. Petrolito is an adequate representative of the Class for purposes of this settlement. *Petrolito*, 221 F.R.D. at 310. Mr. Crisco is similarly adequate.

## 5.  Predominance and Superiority

Plaintiffs seeking to maintain a class action under Rule 23(b)(3) must show that common questions "predominate over any questions affecting only individual members" and that a class action is "superior to other available methods for fair and efficient adjudication of the controversy." Fed. R. Civ. P. 23(b)(3). The "predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation" and is similar to the typicality requirement of Rule 23(a)(3). *Amchem*, 521 U.S. at 521. As noted above, plaintiffs claim relief under the same legal theory, alleging that they were subjected to the identical collection practices initiated by Arrow. "[C]ases regarding the legality of standardized documents and practices often result in the predomination of common questions of law or fact and are, therefore, generally appropriate for resolution by class action." *D'Alauro*, 168 F.R.D. at 458 (". . . several FDCPA claims have received class certification based upon a defendant's use of standardized forms."). Here, the common questions of law and fact related to Arrow's purchase and collection of written-off debt predominate over individual issues. *Petrolito*, 221 F.R.D. at 313-14. Accordingly, the Court should find that plaintiffs have satisfied the predominance prong of Rule 23(b)(3).

To fully satisfy Rule 23(b)(3), plaintiffs must also show that proceeding as a class action

is the superior method to resolve the present controversy. "Class actions are the superior method for resolving controversies when the main objectives of Rule 23 are served: namely, the efficient resolution of the claims or liabilities of many individuals in a single action, as well as the elimination of repetitious litigation and possibly inconsistent adjudications." *D'Alauro*, 168 F.R.D. at 458 (internal citations omitted). The *D'Alauro* court also notes that is it "appropriate for the court to consider the inability of the poor or uninformed to enforce their legal rights and the improbability that large numbers of class members would possess the initiative to litigate individually." *Id.*, citing *Haynes v. Logan Furniture Mart, Inc.*, 503 F.2d 1161, 1164-65 (7th Cir. 1974). This is especially true in the context of FDCPA litigation. *Weiss v. Regal Collections*, 385 F.3d 337, 345 (3d. Cir. Sept. 29, 2004) ("Representative actions, therefore, appear to be fundamental to the statutory structure of the FDCPA. Lacking this procedural mechanism, meritorious FDCPA claims might go unredressed because the awards in an individual case might be too small to prosecute an individual action.")

The Court should find that plaintiffs have satisfied the superiority requirement under Rule 23(b)(3) in light of economic and efficiency concerns, among other reasons. The issues presented to the Court are straightforward and not unduly complex, and a class action is the best method by which to resolve plaintiffs' identical claims against Arrow. Thus, plaintiffs have satisfied both prongs of Rule 23(b)(3). As discussed above, plaintiffs have also satisfied each prerequisite to class certification under Rule 23(a). Accordingly, the Class should be preliminarily certified for purposes of settlement.

## III.  NATURE OF SETTLEMENT

Representative Plaintiffs and Defendant have agreed, subject to this Court's approval, to a settlement of this suit on a class-wide basis. The essential terms of the settlement are set out in

the Agreement of Settlement filed simultaneously herewith.  The settlement is fair, reasonable and sound in light of the relevant facts, the applicable law, and the value of the settlement, economic, as well as non-economic, to the Class.  In fact, the settlement is quite good for a number of reasons, including the fact that no reported cases have ever been brought or certified under the same theory.

The settlement provides substantial benefits to the Class in the following respects.  First, Arrow has agreed to pay the following amounts:

(a)    the sum of Two Hundred Seventy-Five Thousand Dollars ($275,000.00) for the benefit of the approximately 4,600 members of the Class who paid all or part of a sum demanded by Defendant during the relevant time period.  Payment of such sum to members of the Class shall be made on a claims-made basis.  Class members who submit valid and timely Claim Forms ("Claiming Class Members") shall share the sum on a *pro rata* basis in accordance with the amounts paid to Arrow by such member.  Any unclaimed funds or uncashed checks shall not revert to Defendant, but shall be paid to a *cy pres* recipient.

(b)    the sum of Five Thousand Dollars ($5,000) to each of the two Representative Plaintiffs.

(c)    Representative Plaintiffs' reasonable attorneys' fees as approved by the Court, not to exceed Two Hundred Thousand Dollars ($200,000.00), plus reasonable reimbursable expenses.

In addition to the payment of the sums described above, Arrow has also agreed as follows:

(a)    to permanently forgive a sum equal to Twenty-Five Percent (25%) of the original account balance for the approximately 38,200 members of the Class who have not made

a payment to Arrow on account of a debt at issue in the Actions. Arrow estimates that the value of that benefit is approximately eleven million dollars ($11,000,000.00).

(b)    to satisfy any judgment obtained against a member of the Class on account of a debt described in the Complaints in the Actions. Plaintiffs will identify such members and Arrow agrees to share such information in its possession as will aid Plaintiffs in identifying such members, upon reasonable request of Plaintiffs. Upon such identification, Arrow will provide written satisfactions of judgment documents to Class Counsel, Joanne S. Faulkner, Esq., for filing of record.

(c)    within forty-five (45) days following the Effective Date,[2] to instruct each of the credit reporting agencies to whom it reported any of the collection accounts which are the subject of the Actions to delete the accounts/tradelines from the Class members' credit files.

(d)    to close the accounts of the Representative Plaintiffs, and to take no further collection action with respect to those accounts. Defendant will not sell or assign such accounts to any other entity. Defendant will instruct each of the credit reporting agencies to whom it reported the Representative Plaintiffs' collection accounts to delete the accounts/tradelines from their respective credit files.

(e)    to pay all processing and administrative costs and expenses incurred in connection with the compilation of the Class list, printing, publishing and mailing of Notice to the Class, receiving and compiling claim forms, requests for exclusion and objections submitted by the Class, distribution of monies to the Class members, reporting to the Court and all other aspects of claims and settlement administration. All such duties shall be handled by an

---

[2]    As used in the Agreement of Settlement, the term "Effective Date" means the third business day after (a) the lapse of the time for appeal of the Final Order without any appeal having been taken; or (b) both (i) the affirmance on appeal of the Final Order without modification or the dismissal of any appeal of the Final Order without alteration of the Final Order in any respect unsatisfactory to Defendant and/or

independent, third party class action settlement administrator.

As discussed above, the proposed settlement was reached through extensive arms-length negotiations. Following an unsuccessful settlement conference with Magistrate Judge Fitzsimmons and then a resumption of negotiations that lasted several months, the parties reached the framework for a settlement. Counsel thereafter reduced the settlement framework to a memorandum of understanding which was circulated and executed as of February 7, 2005. After reaching that agreement in principle, the parties drafted and circulated a formal Agreement of Settlement. That agreement has now been signed and is filed herewith.

With the Agreement of Settlement and this motion, Plaintiff submits an Order of Preliminary Approval (Exhibit A to Settlement Agreement), Notice of Class Action and of Proposed Settlement (Exhibit B), Claim Form (Exhibit C) and proposed Final Judgment and Order (Exhibit D). The substantive terms of the Settlement Agreement were negotiated vigorously and through zealous advocacy. Class counsel are experienced consumer class action attorneys who are well-qualified to evaluate the proposed Settlement Agreement on behalf of the Class.

The Notice to be sent to each individual Class member, a true and correct copy of which is attached to the Settlement Agreement as Exhibit B, is sufficient to inform Class members regarding: (a) the formation of the Class; (b) the Class definition; (c) the terms of the proposed settlement; (d) the proposed request for an award of attorneys' fees and expenses to counsel; (e) the proposed individual settlement to the Representative Plaintiffs; (f) Class members' right to opt out of the Class and thereby not participate in the proposed settlement; (g) Class members' right to object to the proposed settlement; (h) the time and date of the Final Approval Hearing; and, (i) Class members' right to appear at the Final Approval Hearing in favor of or in opposition

---

Class Counsel, and (ii) the termination of any further right of appellate review.

to the proposed settlement. The Notice is clear in content and provides Class members with sufficient information to make an intelligent decision as to whether to remain in the Class, opt out of the Class, or object to any aspect of the proposed settlement.

## IV.   THE SETTLEMENT ADEQUATELY SATISFIES THE REQUIREMENTS FOR PRELIMINARY APPROVAL

### A.   <u>Standards for Preliminary Approval</u>.

When a proposed class-wide settlement is reached, it must be submitted to the Court for approval. 4 H. Newberg & A. Conte, NEWBERG ON CLASS ACTIONS (4th ed. 2002) at § 11.25, p. 38. Preliminary approval is the first of essentially three steps that comprise the approval procedure for settlement of a class action. The second step is the dissemination of notice of the settlement to all Class members. The third step is a settlement approval or final fairness hearing. *See* MANUAL FOR COMPLEX LITIGATION (FOURTH), § 21.632 (2004). While a settlement class must satisfy each of the requirements of Rule 23(a) and Rule 23(b)(3), "the fact of settlement is relevant to a determination of whether the proposed Class meets the requirement imposed by the Rule." *In re: Prudential Ins. Co. of America Sales Litigation*, 148 F.3d 283, 308-09 (3d Cir. 1998).

The question presented on a motion for preliminary approval of a proposed class action settlement is whether the proposed settlement appears fair and reasonable. MANUAL FOR COMPLEX LITIGATION (FOURTH), §21.632. Preliminary approval is merely the prerequisite to giving notice so that "the proposed settlement . . . may be submitted to members of the prospective Class for their acceptance or rejection." *Philadelphia Housing Authority v. American Radiator and Standard Sanitary Corp.*, 323 F. Supp. 364, 372 (E.D. Pa. 1970). There is an initial presumption of fairness when a proposed settlement, which was negotiated at arm's length by counsel for the Class, is presented for court approval. NEWBERG, § 11.25; MANUAL

FOR COMPLEX LITIGATION (FOURTH), § 21.632.

The approval of a proposed settlement of a class action is a matter within the broad discretion of the trial court. Of course, settlements of class actions are favored in the law. *See In re: General Motors Truck Litigation*, 55 F.3d 768, 784 (3d Cir. 1995). Preliminary approval does not require the trial court to affirmatively answer the ultimate question of whether a proposed settlement is fair, reasonable and adequate. That determination is made only after notice of the settlement has been given to the members of the Class and after they have been given an opportunity to voice their views of the settlement or be excluded from the Class. *See* 3B J. Moore, MOORE'S FEDERAL PRACTICE, ¶23.80 [2.1], at 23-479 (2d ed. 1993).

The question of whether a proposed settlement is fair, reasonable and adequate necessarily requires a judgment and evaluation by the attorneys for the parties based upon a comparison of "the terms of the compromise with the likely rewards of litigation." *Weinberger v. Kendrick*, 698 F.2d 61, 73 (2d Cir. 1982). Therefore, many courts recognize that the opinion of experienced counsel supporting the settlement is entitled to considerable weight.

In addition to being substantively reasonable in relation to the risks and likely rewards of litigation, the proposed settlement must be the result of good faith, arms length negotiations. In evaluating this requirement, courts proceed as follows:

> If the proposed settlement appears to be the product of serious informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to Class Representatives or segments of the Class, and falls within the range of possible approval, then the court should direct that notice be given to the Class Members of a formal fairness hearing, at which evidence may be presented in support of and in opposition to the settlement.

*Collier v. Montgomery County*, 192 F.R.D. 176, 184 (E.D. Pa. 2000). A finding that these factors are present establishes an initial presumption of fairness. *Id.*; *see also General Motors*, 55 F.3d at 785-86. Here, as the parties' negotiations were initially mediated and overseen by

14

Magistrate Judge Fitzsimmons, and then followed up by months of negotiations and exchanges of drafts of settlement documents, the proposed settlement easily meets these standards.

      **B.**      <u>**The Terms of the Proposed Settlement Are Fair And Reasonable**</u>

The proposed settlement is reasonable when considered in light of disputed liability, a difficult claim for actual damages and the statutory cap on damages.  These factors demonstrate that the proposed settlement is a very good result for the Class.  Proving actual damages might be problematic; while Plaintiffs contend that payment of debt owed constituted actual damages in this case because, they allege, Arrow had no legal right to collect such payments,[3] Arrow would no doubt vigorously contest that point.  Also, statutory damages in an FDCPA class action are capped at the lesser of $500,000.00 or 1% of a defendant debt collector's net worth.  15 U.S.C. §1692k(a)(2).  Even if the Representative Plaintiffs won their FDCPA claim at trial, there is no assurance that the jury would award the maximum of one percent of Arrow's net worth.  An award by a jury or court in that amount is by no means certain, given the statutory factors that have to be taken into account in making such an award – frequency and persistence of noncompliance with the statute; nature of the noncompliance; and, extent to which noncompliance was intentional.  15 U.S.C. § 1692k(b)(2).  Thus, this settlement avoids the litigation risk to the Class and secures significant relief for its membership.

In addition to the payment of money to those Class members who paid Arrow in response to collection attempts, Arrow has also agreed to provide the Class with significant other relief.  Arrow will forgive approximately $11,000,000 in debt presently owed by Class members, or

---

[3]     *See, e.g., Spicer v. Lenahan*, 2004 WL 3112554 (D. Conn. Sept. 14, 2004) (court awarded actual damages in amount paid by plaintiff to defendant as result of FDCPA violations);  *Gervais v. O'Connell, Harris & Associates, Inc.*, 297 F.Supp.2d 435 (D. Conn. 2003) (debtor entitled to actual damages in amount of money improperly removed from bank account*);  Irwin v. Mascott*, 112 F.Supp.2d 937, 955 (N.D. Ca. 2000) (plaintiffs entitled to refund of all money collected by debt collector beyond what it was lawfully entitled to collect).

25% of each member's obligations. From the perspective of the individual consumer, a reduction of a debt by 25% is more valuable than a token share of some negotiated sum which by statute could not exceed $500,000. 15 U.S.C. §1692k(a)(2). Even if, after protracted discovery and a trial, Arrow were found liable for the full statutory amount, that would only translate into approximately $13.00 per Class member.

Beyond that economic benefit, Arrow has also agreed to satisfy any judgment obtained against a member of the Class on account of a debt described in the Complaints in the Actions and to instruct each of the credit reporting agencies to whom it reported any of the collection accounts which are the subject of the Actions to delete the accounts/tradelines from the Class members' credit files.

The adequacy of the proposed settlement is still more clearly appreciated when considered in light of Arrow's liability defenses and the possibility of Plaintiffs being unable to prove liability. Winning this case before a jury is by no means certain and Plaintiffs have decided that such a risk is unwise in the face of the proposed settlement.

The proposed settlement is the product of serious, informed and non-collusive negotiations. Defendant has continued to deny any wrongdoing or legal liability arising out of the conduct alleged in this action. Nonetheless, Arrow has concluded that it is desirable that this action be settled in the manner and upon the terms and conditions set forth in the Settlement Agreement in order to avoid the expense, inconvenience, and burden of further legal proceedings, and the uncertainties of trial and appeals.

Plaintiffs and their counsel recognize the expense and length of a trial in this action against Defendant through possible appeals, which could take several years. They have also taken into account the time already invested in this case, the uncertain outcome and risk of

litigation.  Plaintiffs and their counsel believe that the settlement set forth in the Settlement Agreement confers substantial immediate benefits upon the Class.  Based upon their evaluation, Representative Plaintiffs and their counsel have determined that the settlement is in the best interest of the Class.  The proposed settlement has no "obvious deficiencies" and falls well within the range for approval.

As noted, settlements of class action disputes are favored in the law, to bring finality and to conserve judicial resources.  *General Motors*, 55 F.3d at 783.  Settlement of consumer class actions otherwise involving individual claims for small sums, such as the instant Actions under the FDCPA and CUTPA, are particularly well suited to class settlement.

The settlement does not improperly grant preferential treatment to the Plaintiffs or to any segment of the Class.  The amounts payable to the Plaintiffs are within the amounts available under the FDCPA for their respective individual claims for actual and statutory damages and also reflect their involvement and services rendered on behalf of absent Class members.

The stage of the proceedings at which this settlement was reached militates in favor of preliminary approval and ultimately, final approval of the settlement.  The agreement to settle did not occur until the parties had exchanged informal and pertinent class discovery, and participated in hours of discussions and exchanges of settlement documents.  Plaintiffs' counsel only entertained settlement possibilities after they possessed sufficient information to make an informed judgment regarding the likelihood of certification, and of success on the merits, and the results that could be obtained through further litigation.  There is no need for continued litigation - especially where this settlement result provides significant benefits to the consumers on whose behalf the litigation was brought.  Further litigation would serve only to increase counsel fees and consume scarce judicial resources.

At the hearing on final approval, movants anticipate a final judgment giving effect to the Settlement Agreement and dismissing without prejudice all claims of any purported Class members who have been excluded from the Class as set forth above.  Upon confirmation of the settlement at the Final Approval Hearing and performance by Defendant of all of its obligations under the Settlement Agreement, Arrow will be fully, finally and completely released of all claims, actions and causes of action that were asserted in the Actions by the Representative Plaintiffs and the Class, or that arise from the initiation, litigation or settlement of the Actions or the administration of the settlement.

## V.    CONCLUSION

Accordingly, for all the reasons discussed herein, Plaintiffs Luciano Petrolito and Joseph Crisco request that the Court grant preliminary approval of the proposed settlement, as set forth in the proposed Order of Preliminary Approval.

Dated:  March 31, 2005                     Respectfully Submitted,

                                           __/s/ Joanne S. Faulkner____
                                           **JOANNE S. FAULKNER ct04137**
                                           Joanne S. Faulkner
                                           123 Avon Street
                                           New Haven, CT 06511-2422
                                           (203) 772-0395

**DONOVAN SEARLES, LLC**
David A. Searles, Esquire
1845 Walnut Street, Suite 1100
Philadelphia, PA  19103
(215) 732-6067

**FRANCIS & MAILMAN, P.C.**
James A. Francis
Mark D. Mailman
100 S. Broad Street, 19th Floor
Philadelphia, PA 19110
(215) 735-8600

Attorneys for Plaintiff and the Class

Certificate of Service

I hereby certify that on March 31, 2005, a copy of foregoing Memorandum was filed electronically. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

_____/s/ Joanne S. Faulkner___
    JOANNE S. FAULKNER ct04137
    123 Avon Street
    New Haven, CT 06511-2422
    (203) 772-0395
j.faulkner@snet.net