UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| LUCIANO PETROLITO | ) | |
| JOSEPH CRISCO | ) | |
|       Plaintiffs, | ) | Case No. 3:02CV 484 JCH (HBF) |
| | ) | |
|   v. | ) | |
| | ) | |
| ARROW FINANCIAL SERVICES LLC | ) | July 19, 2005 |
|       Defendant | ) | |
| | ) | |

**PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR FINAL
APPROVAL OF CLASS ACTION SETTLEMENT**

I.     **BACKGROUND**

    A.    **Procedural History**

On March 20, 2002, Mr. Petrolito brought this class action against Defendant Arrow

Financial Services, LLC ("Arrow") pursuant to the FDCPA and the Connecticut Unfair Trade

Practices Act ("CUTPA"). On September 26, 2002, Mr. Crisco brought his class action litigation

pursuant to CUTPA against Arrow in *Crisco v. Arrow Financial Services LLC* in the State of

Connecticut Superior Court, Judicial District of Waterbury at Waterbury, Docket No. X02-CV-

02-0175840S. The *Petrolito* case and the *Crisco* case are collectively referred to herein as the

"Actions."

Plaintiffs asserted in the Actions that Arrow violated the FDCPA and CUTPA by

purchasing and seeking to collect on numerous charged-off debts, telling Connecticut consumers

and Connecticut courts that Arrow had purchased their debts. The Connecticut Consumer

Collection Agency Act ("CCCAA") expressly prohibits debt collectors from attempting to collect

or sue on the purchased or assigned accounts.[1]  Plaintiffs asserted the same claim under both CUTPA and the FDCPA: that Arrow's collection efforts were illegal by reason of the prohibition of the CCCAA (CCCAA regulations include identical prohibitions as the applicable FDCPA prohibitions found in sections 1692e(2)(A), (5), (8), (9), (10) and 1692f(1)).

After this Court preliminarily certified the proceeding as a class action, the parties reached a settlement in March 2005.  As part of the overall settlement, Plaintiffs filed a Second Amended Complaint in the *Petrolito* action, adding the claims presently asserted in the *Crisco* case to the claims already pending in the *Petrolito* case, adding Joseph Crisco as an additional named plaintiff and class representative and amending the definition of the class to comport with the definition of the settlement class.  Should the Agreement of Settlement receive final approval from the Court, the parties will dismiss the *Crisco* case with prejudice.

**B.    The Settlement**

The essential terms of the settlement are set out in the Settlement Agreement preliminarily approved by this Court.  The parties submit that the settlement is fair, reasonable and sound in light of the relevant facts, the applicable law, and the value of the settlement, economic, as well as non-economic, to the Class.  Plaintiffs believe that the settlement is quite good for a number of reasons, including the fact that no reported class action cases have ever been brought or classes certified under the same theory in Connecticut. Elsewhere, Plaintiffs could identify only one similar case. *Foster v. D.B.S. Collection Agency*, 2002 WL 484500 (S.D. Ohio Mar. 26, 2002).

The settlement provides substantial benefits to the Class in the following respects.  First, Arrow has agreed to pay the following amounts:

---

[1]    CCCAA § 36a-805 provides, "No consumer collection agency shall: . . . (3) purchase or receive

(a)    the sum of Two Hundred Seventy-Five Thousand Dollars ($275,000.00) for the benefit of the approximately 4,600 members of the Class who paid all or part of a sum demanded by Defendant during the relevant time period. Payment of such sum to members of the Class shall be made on a claims-made basis. Class members who submit valid and timely Claim Forms ("Claiming Class Members") shall share the sum on a *pro rata* basis in accordance with the amounts paid to Arrow by such member. Any unclaimed funds or uncashed checks shall not revert to Defendant, but shall be paid to a *cy pres* recipient.

(b)    the sum of Five Thousand Dollars ($5,000.00) to each of the two Representative Plaintiffs, Mr. Petrolito and Mr. Crisco.

(c)    Representative Plaintiffs' reasonable attorneys' fees as approved by the Court, not to exceed Two Hundred Thousand Dollars ($200,000.00), plus reasonable reimbursable expenses.

In addition to the payment of the sums described above, Arrow has also agreed as follows:

(a)    to permanently forgive a sum equal to Twenty-Five Percent (25%) of the original account balance for the approximately 38,200 members of the Class who have not made a payment to Arrow on account of a debt at issue in the Actions. Arrow estimates that the value of that benefit is approximately eleven million dollars ($11,000,000.00).

(b)    to satisfy any judgment obtained against a member of the Class on account of a debt described in the Complaints in the Actions. Plaintiffs will identify such members and Arrow agrees to share such information in its possession as will aid Plaintiffs in identifying such members, upon reasonable request of Plaintiffs. Upon such identification, Arrow will provide

---

assignments of claims for the purpose of collection or institute suit thereon in any court."

written satisfactions of judgment documents to Class Counsel, Joanne S. Faulkner, Esq., for filing of record.

(c)    within forty-five (45) days following the Effective Date, to instruct each of the credit reporting agencies to whom it reported any of the collection accounts which are the subject of the Actions to delete the accounts/tradelines from the Class members' credit files.

(d)    to close the accounts of the Representative Plaintiffs, and to take no further collection action with respect to those accounts.  Defendant will not sell or assign such accounts to any other entity.  Defendant will instruct each of the credit reporting agencies to whom it reported the Representative Plaintiffs' collection accounts to delete the accounts/tradelines from their respective credit files.

(e)    to pay all processing and administrative costs and expenses incurred in connection with the compilation of the Class list, printing, publishing and mailing of Notice to the Class, receiving and compiling claim forms, requests for exclusion and objections submitted by the Class, distribution of monies to the Class members, reporting to the Court and all other aspects of claims and settlement administration. All such duties were and, assuming final approval is granted, will continue to be handled by an independent, third party class action settlement administrator. The amount paid by Arrow for those services is expected to total approximately $60,000.

Thus, the total aggregate benefit achieved for the Class, as outlined above, is in excess of $11,500,000.00.[2]Class certification requirements are satisfied, and the settlement is fair and reasonable.

_____

[2]    This estimate is of the gross economic settlement value, which includes the costs of notice and claims administration as well as Plaintiff's attorneys' fees and costs.  Subtracting those amounts results in a net economic settlement value of approximately $11,240,000.  Neither sum includes the value created by Defendant's agreement to satisfy judgments obtained against Class members or to credit reporting agencies to

## II.    THE PROPOSED SETTLEMENT CLASS MEETS THE REQUIREMENTS FOR CERTIFICATION

Under Federal Rule of Civil Procedure 23, a class should be certified when the plaintiff meets all four requirements of Rule 23(a) and one of the requirements of Rule 23(b).  For the reasons discussed below, the requirements of Rule 23 are satisfied in this case.

### A.    Rule 23(a)(1) – Numerosity

The first requirement of Rule 23(a) is that the class members are so numerous that ordinary joinder of all members is not practicable.  Impracticability exists where individual adjudication would take an extended period of time and joinder of all the parties would be expensive, time consuming and drastically increase the legal expenses for all parties.[3]  Generally, "numerosity is presumed at a level of 40 members."[4]  Here, Arrow has represented that approximately 42,800 persons fall within the definition of the Class.  Accordingly, the Court should find that the numerosity requirement is satisfied.

### B.    Rule 23(a)(2) – Commonality

Rule 23(a)(2) requires that common questions of law or fact be at the core of the cause of action alleged by the plaintiff.   Courts have typically found a common nucleus of operative facts where, as in the present action, the defendant engaged in standardized conduct toward putative class members.  *Comer v. Cisneros*, 37 F.3d 775, 797 (2d Cir. 1994); *Marisol A. v. Giuliani*, 126

---

delete the accounts/tradelines from the Class members' credit files   In any event,  measured economically and/or with the intangibles of the equitable relief, the value achieved for the Class is substantial.

[3]     *In re Drexel Burnham Lambert Group, Inc.*, 960 F.2d 285, 290 (2d Cir. 1990).

[4]     *Consolidated Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir. 1995).

F.3d 372, 376 (2d Cir. 1997); *Garfinkel v. Memoray Metals, Inc.*, 695 F. Supp. 1397, 1402 (D. Conn. 1988).  ).  Here, the core issues raised in the Actions relate to the illegality of the purchase of consumer debt and the efforts to collect that debt from Connecticut.  This Court has already found that the issue whether Arrow's purchase of written-off debt violated the CCCAA, and thus the FDCPA and CUTPA, is a common issue of law or fact among the Class members.  *Petrolito*, 221 F.R.D. at 309.  Accordingly, the Court should find that plaintiffs' claims meet the commonality requirement of Rule 23(a)(2).

### C.    Rule 23(a)(2) – Typicality

Rule 23(a)(3) requires that the claims or defenses of the representative parties be typical of the claims or defenses of the class.  The typicality requirement "is satisfied when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability."[5]  Minor variations among individual plaintiffs' fact patterns do not undermine the typicality requirement.[6]  Here, Plaintiffs contend that both the representative Plaintiffs and each Class member was subjected to the same debt collection practice. Plaintiffs will rely on the same legal theories to support their individual claims as well as those of the Class.  *Petrolito*, 221 F.R.D. at 310.  Because "the typicality requirement is usually met irrespective of minor variations in the fact patterns underlying individual claims, *Robidoux v. Celani*, 987 F.2d 931, 936-37 (2d Cir. 1993), the Court should find that the typicality requirement

---

[5]    *In re Drexel Burnham Lambert*, 960 F.2d at 291.

[6]    *See Robidoux v. Celani*, 987 F.2d 931, 936-937 (2d Cir. 1993).

is satisfied.

### D.    Rule 23(a)(4) – Adequacy of Representation

The requirement of Rule 23(a)(4) is met if it appears that (1) Plaintiff's attorneys are qualified, experienced and generally able to conduct the litigation and (2) Plaintiff's interests are not antagonistic to those of the class they seek to represent. *See, e.g., Marisol A.*, 126 F.3d at 378; *In re Joint Eastern and Southern Dist. Asbestos Litig.*, 78 F.3d 764, 778 (2d Cir. 1996).

The adequacy of representation prong tends to merge with the typicality and commonality previously discussed. *Amchem Prods, Inc. v. Windsor*, 521 U.S. 591, 625 n.20 (1997). The existence of the elements of adequate representation are presumed and the burden is on the defendant to demonstrate that the representation will be inadequate. As the court explained in *Cook v. Rockwell Int'l Corp.*, 151 F.R.D. 378, 386 (D. Colo. 1993):

> [A]dequate representation presumptions are usually invoked in the absence of contrary evidence by the party opposing the class. On the issue of no conflict with the class, one of the tests for adequate representation, the presumption fairly arises because of the difficulty of proving negative facts. On the issue of professional competence of counsel for the class representative, the presumption fairly arises that all members of the bar in good standing are competent. Finally, on the issue of intent to prosecute the action vigorously, the favorable presumption arises because the test involves future conduct of persons, which cannot fairly be prejudged adversely.

*Id.* (quoting 2 NEWBERG ON CLASS ACTIONS § 7.24 at pp. 7-81, 7-82).

Both prongs of the "adequacy" test are met here. First, Plaintiffs retained counsel experienced in class action litigation to prosecute their claims and those of the Class. Second, there is nothing to suggest that the representative Plaintiffs have any interest antagonistic to the vigorous

pursuit of the Class claims against Defendants.[7]  Plaintiffs share with the Class the interest in establishing that the defendants' practices violated the FDCPA and CUTPA.  Accordingly, the representative Plaintiffs adequately represent the interests of the Class.

### E.     Rule 23(b)(3) – Predominance/Superiority

In addition to satisfying the requirements of Rule 23(a), a potential class action must qualify under one of the categories set fourth in Rule 23(b).  Rule 23(b)(3) allows class certification if "the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy."  Here, both prongs of the (b)(3) category of Rule 23(b) are satisfied.

### 1.     Common Questions of Law or Fact Predominate

Rule 23(b)(3) requires that the questions of law or fact common to the members of the class predominate over any questions affecting on individual members.  Common issues predominate over individual issues where plaintiffs have alleged a common course of conduct on the part of a defendant.  *In re Prudential Ins. Co. Am. Sales Practice Litig.*, 148 F.3d 283, 314-315 (3d Cir. 1998).  Cases dealing with the legality of standardized documents or conduct are generally appropriate for certification and resolution as a class because the document is the crux of

---

[7]     *In re Playmobil Antitrust Litigation*, 35 F.Supp.2d 231, 243 (E.D.N.Y. 1998) ("One court has summarized the adequacy requirement thusly: 'Absent any conflict between the interests of the representatives and other purchasers, and absent any indication that the representative will not aggressively conduct the litigation, fair and adequate protection of the class may be assumed.'"), *quoting Guarantee Ins. Agency Co. v. Mid Continental Realty Corp.*, 57 F.R.D. 555, 565 (N.D.Ill. 1972).  Furthermore, such conflict must be real and not speculative.  *Robertson v. National Basketball Association*, 389 F.Supp. 867, 899 (S.D.N.Y. 1975).

the case and results in the predomination of common questions of law or fact.[8]  Consequently, the

first prong of Rule 23(b)(3) is satisfied in this case.

### 2.    A Class Action is Superior to Other Available Methods to Resolve this Controversy

In addition to finding the predominance of common questions, Rule 23(b)(3) also requires

that the Court determine that "a class action is superior to other available methods for the fair and

efficient adjudication of the controversy."  A class action is widely recognized as superior to other

available methods -- particularly individual lawsuits -- for the fair and efficient adjudication of a

suit that affects a large number of persons injured by violations of consumer protection laws or

common law. *Prudential,* 148 F.3d at 316;  *see Lake v. First Nationwide Bank*, 156 F.R.D. 615,

626 (E.D. Pa. 1994) (public interest in vindicating rights of consumers favors disposition of claims

in a class action).      Defendant has violated the rights of such a large number of Connecticut

residents to such an extent that the cost of pursuing individual litigation to seek recovery against a

well-financed adversary is not feasible.  Accordingly, a class action is superior to other available

methods for the fair and efficient adjudication of this peculiarly Connecticut matter.  *Macarz v.*

*Transworld Systems, Inc.,* 193 F.R.D. 46, 55 (D. Conn. 2000), relying on *Mace v. Van Ru Credit*

*Corp.*, 109 F.3d 338 (7th Cir. 1997).

---

[8]      *Mailloux*, 204 F.R.D. at 42; *Harrison*, 1997 WL 469996, at *9; *D'Alauro*, 168 F.R.D. at 458.

Moreover, as the FDCPA's statutory scheme makes apparent, Congress specifically envisioned the class action as a principal enforcement mechanism for the FDCPA.[9]

The Court should find that plaintiffs have satisfied the superiority requirement under Rule 23(b)(3) in light of economic and efficiency concerns, among other reasons. The issues presented to the Court are straightforward and not unduly complex, and a class action is the best method by which to resolve plaintiffs' identical claims against Arrow. Thus, plaintiffs have satisfied both prongs of Rule 23(b)(3).

## III.    THE SETTLEMENT IS FAIR, REASONABLE AND ADEQUATE

### A.    Relevant Factors.

Pursuant to the factors set forth in *Foe v. Cuomo*, 700 F. Supp. 107, 109-13(1988), *aff'd*, 892 F. 2d 196 (2d Cir. 1989), the Court must determine whether the proposed settlement is fair, reasonable, and adequate. "Keeping in mind that the law favors settlement (citation omitted) especially in class actions," in making its determination, the Court should consider the following factors:  (1) the likelihood of Plaintiff's success on the merits; (2) the extent of support from the parties; (3) the judgment of counsel; (4) the presence of good faith bargaining; and (5) the complexity and nature of the issues of law and fact. 700 F. Supp. at 110.

In applying these factors, the Court need not substitute its judgment for that of the parties who negotiated the settlement nor conduct a mini-trial of the merits of the action.  Where, as here,

---

[9]    *See* 15 U.S.C. § 1692k(a) and (b).  *See also  Weiss v. Regal Collections*, 385 F.3d 337, 345 (3d Cir 2004) (recognizing "explicit" congressional directive that FDCPA be enforced by private attorneys generals acting in a representative capacity).

the settlement was negotiated at arm's-length, the settlement enjoys a presumption that it is fair, reasonable and in the best interest of the class.[10] The Court should reach an "intelligent and objective opinion of the probabilities of ultimate success" compared to the benefits obtained through compromise.[11] Thus, in reviewing a proposed settlement of a class action, the Court should not compare its terms with a hypothetical or speculative measure of recovery that might be achieved after prosecution of an action to a successful conclusion.[12]

### A.   The Class Recovery is Fair

Under the FDCPA, a class recovery is limited to the lesser of $500,000 or 1% of the defendant's net worth. Defendant represented that the $500,000 cap would apply. The cash proportion of the class recovery, $275,000, is reasonable in view of the number of claimants. The $11,000,000 in additional value for forgiveness of Class members' debts and the satisfactions of judgment add considerably to any comparison of net worth. Removal of the Arrow account from Class members' credit reports has inestimable value, since the 'black mark" could cause increased credit card / mortgage interest rates, increased insurance premiums, or credit denials.

Defendant bore the burden of class notice and administration; the cost thereof was not deducted from the amount devoted to the Class. The award to Plaintiffs and counsel was also not

---

[10]    *See, e.g., States of N.Y. and Md. v. Nintendo of Am., Inc.,* 775 F. Supp. 676, 680-81 (S.D.N.Y. 1991).

[11]    *Newman v. Stein,* 464 F.2d 689, 692 (2d Cir. 1972).

[12]    *Milstein v. Werner,* 57 F.R.D. 515, 524 (S.D.N.Y. 1972).

deducted from the amount devoted to the class. Defendant agreed to pay the class representatives and counsel in addition to the amount devoted to the class.

Since 319 class members will participate pro rata in the monetary portion of the recovery, each will recover an average of approximately $862.00. This is well above the range of reasonableness in light of the best possible recovery.[13] An added benefit of this settlement is that any unclaimed funds will not revert to the defendant, but will be paid to *cy pres* recipients.

### B.    The Statutory Damages Cap

The maximum statutory damages for a class action under the FDCPA is the lesser of $500,000 or one percent of the debt collector's net worth.   Under the only appellate case addressing the issue, the Seventh Circuit case of *Sanders v. Jackson*,[14] net worth under the FDCPA means "balance sheet or book value net worth," as opposed to "fair market" net worth.[15]

Congress modeled the class action damages provision of the FDCPA on the damages

---

[13]      *See, e.g.*, *Bonnett v. Education Debt Services, Inc.*, No. 01-6528, 2003 WL 21658267 (E.D. Pa. May 9, 2003) (granting final approval to an award of $77.46 to each of 284 class members who returned claim forms); *Cope v. Duggins*, 203 F.Supp.2d 650 (E.D. La. 2002) (672 class members out of 4,925 returned claim forms and received $11.90 each); *Henderson v. Eaton*, No. C.A.01-0138, 2002 WL 3145728 (E.D. La. October 25, 2002) (granting final approval to an award of $3,000 to 142 class members to be divided on a *pro rata* basis, or about $21.00 for each class member); *Oslan v. Law Offices of Mitchell N. Kay*, 232 F.Supp.2d 436 (E.D. Pa. Nov. 18, 2002) (319 out of 3,413 class members received $62 each); *Thomas v. NCO Financial Systems, Inc.*, No. C.A. 00-5118, 2002 WL 1773035 (E.D. Pa. July 31, 2002) (Court preliminarily approved a settlement that, with a claim form return rate of 5%, provided each claimant with $1.09, representing 150% of the maximum class recovery); *Saunders v. Berks Credit & Collections, Inc.*, No. Civ. 00-3477, 2002 WL 1497374 (E.D. Pa. July 11, 2002) (159 out of over 3,000 class members claimed a portion of the settlement funds and received $62.54 each).

[14]      209 F.3d 998 (7th Cir. 2000).

[15]      *Id*. at 1003.

provision of the Truth in Lending Act.[16]  Before TILA was amended in 1974 to cap statutory damages at the lesser of $500,000 or one percent of a defendant's net worth, courts were placed in "a dilemma which had them choose between denying class actions altogether or permitting multi-million dollar recoveries against defendants for minor or technical violations…."[17]  Thus, the goal of the TILA and FDCPA statutory damage caps is to teach defendants a lesson by providing for a meaningful class recovery while at the same time protecting the financial viability of defendants, which would make courts less reluctant to certify class actions involving such claims.[18]  While one may question the wisdom of adopting such a low ceiling for debt collectors, which typically have a much lower net worth than financial institutions, Congress made a rational policy decision that is entitled to deference by the courts.

---

[16]  *Compare* 15 U.S.C. § 1692k of the FDCPA with 15 U.S.C. § 1640 of TILA.

[17]  *McCoy v. Salem Mortgage Co.*, 74 F.R.D. 8, 10 (E.D.Mich. 1976).

[18]  *See id.*

### C.    The Complexity, Expense and Duration of the Litigation

As appears from the Docket Sheet, this litigation promised to be hard fought. The settlement agreement expressly recited the "the considerable risks and delays of further litigation" as one of the considerations for settlement.

### D.    The Reaction of the Class to the Settlement

No objections to the settlement were received by the date the Court set for objections.

### E.    The Course of Negotiations and Opinion of Counsel

Plaintiffs' counsel and defense counsel believe that the settlement is fair, reasonable, and adequate. Defendant raised potentially meritorious defenses to the lawsuit, and it is possible that there would be no recovery if the case is not settled. This settlement is the result of lengthy and serious negotiations and was assisted and promoted with the help of Magistrate Judge Fitzsimmons who was appointed by the Court to assist the parties in resolving the controversy.

### F.    The Class Representatives' Award

A class representative is entitled to statutory damages separate from the class award, 15 U.S.C. § §1692k(a))2)(B)(i).  Normally, a class representative is also given an incentive award, for the efforts put into the case, including consulting with counsel, and sitting for depositions.  The incentive award of $5000 each is unobjectionable, indeed, particularly because that includes each plaintiff's entitlement to $1,000 in statutory damages. Rossman & Edelman, Consumer Class Actions § 11.8 n. 72 (5th ed. 2002); National Ass'n of Consumer Advocates, *Standards and Guidelines for Litigating and Settling Consumer Class Actions* §4C, 176 F.R.D. 375 (1998) ($2,000-3,000 is modest).  *See also Perry v. FleetBoston Financial Corp.*, 2005 WL 1527694 (E.D. Pa. June 28, 2005) (awarding $5000 each to three class representatives, citing cases).

G.      **<u>Attorney's fees</u>**

Plaintiffs have filed a separate application and memorandum regarding fees.    The settlement agreement provides that Defendant agrees not to oppose the application for those fees. The reasonableness of the fee requested here is discussed in that motion.

## IV. <u>CONCLUSION</u>

For the foregoing reasons, Plaintiff respectfully requests that this Court grant final approval to the settlement class and the application of each Plaintiff for a $5000 incentive award.

THE PLAINTIFFS

BY____/s/ Joanne S. Faulkner___
        JOANNE S. FAULKNER ct04137
123 Avon Street
New Haven, CT 06511-2422
(203) 772-0395
j.faulkner@snet.net

**DONOVAN SEARLES, LLC**
David A. Searles, Esquire
1845 Walnut Street, Suite 1100
Philadelphia, PA 19103
(215) 732-6067

**FRANCIS & MAILMAN, P.C.**
James A. Francis
Mark D. Mailman
100 S. Broad Street, 19th Floor
Philadelphia, PA 19110
(215) 735-8600

Attorneys for Plaintiff and the Class

Certificate of Service

I hereby certify that on July 19, 2005, a copy of foregoing Memorandum was filed electronically. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

_____/s/ Joanne S. Faulkner___
      JOANNE S. FAULKNER ct04137
123 Avon Street
New Haven, CT 06511-2422
(203) 772-0395
j.faulkner@snet.net